Anton E. SPERLING, Appellant,

v.

UNITED STATES of America et al., Appellees.

No. 74–1533.

United States Court of Appeals,
Third Circuit.

Argued Jan. 24, 1975.

Decided April 18, 1975.

As Amended May 2, 1975.

Joseph Meehan, Long Branch, N. J., for appellant.

Jonathan L. Goldstein, U. S. Atty., John J. Barry, George E. Mittelholzer, Asst. U. S. Attys., Newark, N. J., for appellees.

Before VAN DUSEN, GIBBONS and HUNTER, Circuit Judges.

OPINION OF THE COURT

GIBBONS, Circuit Judge.

This appeal, involving a claim of job discrimination by the federal govern-

ment, brings before us for the first time important questions concerning the proper construction and application of the civil remedy afforded to federal employees in the district courts by § 717(c) of the Equal Employment Opportunity Act of 1972, Pub.L.No.92–261, 86 Stat. 111, 42 U.S.C. § 2000e–16(c), amending Title VII of the Civil Rights Act of 1964, Pub.L.No.88–352, 78 Stat. 255, 42 U.S.C. § 2000e et seq.

The Act mandates that all personnel actions affecting employment in the federal government are to be free from discrimination based on race, color, religion, sex, or national origin,[1] and provides the Civil Service Commission with broad remedial authority to insure that this explicit mandate will be carried out. The Act designates the Civil Service Commission as the administrative agency to review the claims of aggrieved federal employees or applicants for federal employment.[2] Recognizing that private sector employees dissatisfied with the fact-finding or the conciliation procedures of the Equal Employment Opportunity Commission (EEOC) in Title VII actions are authorized to press their claims in the federal district courts, 42 U.S.C. § 2000e–5(f)–(k), the Act also provides a civil remedy in the district courts to federal employees dissatisfied with Civil Service Commission (CSC) review of their claims.[3]

Appellant Anton E. Sperling, a career employee in federal service filed suit in the district court pursuant to § 717(c). He appeals here from an order of the district court which granted the government's motion for summary judgment. Sperling had been employed as a civilian writer by the United States Army Electronics Command at Fort Monmouth, New Jersey (ECOM) since 1957. At ECOM, Sperling served as Executive Vice-President of Lodge 1904 of the American Federation of Government Employees (AFL–CIO), and as the union's grievance representative in Equal Employment Opportunity proceedings at the Fort. In that capacity, Sperling, a white man, represented a black ECOM employee in a series of discrimination grievance proceedings from 1965 through 1967. Sperling claims that he was denied a promotion to a GS–13 position in November, 1968, in retaliation for his successful representation, as union grievance delegate, of the black ECOM employee. Sperling pressed his own claim through the administrative process by

---

**1.** § 717(a), 42 U.S.C. § 2000e–16(a) provides in part:

"All personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."

**2.** § 717(b), 42 U.S.C. § 2000e–16(b) provides in part:

"Except as otherwise provided in this subsection, the Civil Service Commission shall have authority to enforce the provisions of subsection (a) of this section through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section, and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section. . . . ."

**3.** § 717(c), 42 U.S.C. § 2000e–16(c) provides:

"Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this sec-tion, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant."

§ 717(d), 42 U.S.C. § 2000e–16(d) provides:
"The provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder."

filing a series of five complaints between March, 1968 and October, 1969, culminating in an adverse decision by the Board of Appeals and Review of the United States Civil Service Commission on July 15, 1972. On August 15, 1972 he filed suit in district court.

Sperling's amended complaint joins as defendants the Secretary of the Army, civilian and military personnel employed by the Department of the Army, the Commissioners of the United States Civil Service Commission, and the United States. The principal relief sought is a retroactive promotion to a GS–13 employment level together with back pay, and all other attendant rights and benefits for that level from December, 1968. Sperling also seeks an award of counsel fees.

Jurisdiction before the district court was alleged pursuant to the Federal question statute, 28 U.S.C. § 1331; the Civil Rights Act, 28 U.S.C. § 1343; the Tucker Act, 28 U.S.C. § 1346(a)(2); the Mandamus Statute, 28 U.S.C. § 1361; the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202; the Administrative Procedure Act, 5 U.S.C. § 702; the Back Pay Act, 5 U.S.C. § 5596; and the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16.

On August 20, 1973, the government moved to dismiss Sperling's complaint for failure to state a claim upon which relief could be granted, and, alternatively, moved for summary judgment. Sperling opposed the government's motions, and on October 16, 1973, filed a cross-motion for summary judgment. Sper-

ling's position, both before the district court and on appeal, is that the administrative record leaves no fact issue as to a showing of the government's discrimination against him, and hence entitlement to relief. If, however, this court concludes that there is a fact issue as to discrimination, Sperling's position is that he is entitled to a *de novo* hearing in the district court on that issue. In the alternative, he is agreeable to having the determination made on the administrative agency record without an additional evidentiary hearing. The government's position before the district court, and on appeal, is (1) that the decision of the Board of Appeals of the Civil Service Commission is final; or (2) that if there is any judicial review it is limited to a determination that administrative due process had been afforded; or (3) that if any factual review is permitted it is limited to determining whether substantial evidence in the administrative record as a whole supports the Commission's findings.

The district court concluded that it had jurisdiction under the Tucker Act, but that the scope of judicial review available under that jurisdictional grant was limited to determining whether substantial evidence supported the Commission's findings.[4] Alternatively, it held that if the suit was cognizable under § 717(c) of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16(c), which the government disputed, its scope of review was limited to determining whether administrative due process was afforded by the agency.[5]

---

**4.** The court wrote:

"Regardless of whether the allegations of plaintiff are based on discrimination or simply failure to follow appropriate administrative regulations, there is substantial evidence to support the Civil Service Commission finding that the plaintiff was not improperly denied promotional opportunity and that the action of the agency was not arbitrary or capricious." (5 App. at 1267).

The district court probably erred in concluding that it had Tucker Act jurisdiction, since 28 U.S.C. § 1346(a)(2) limits that jurisdiction to claims not exceeding $10,000. Sperling's

claim appears to exceed that amount even without regard to the prayer for counsel fees.

**5.** The court wrote:

"However, the scope of review for claims of discrimination in federal employment based on 42 U.S.C. Sec. 2000e–2 et seq., Executive Order 11491 and presumably Executive Order 11478 is even more limited. Assuming arguendo that plaintiff's claim is cognizable under either the Equal Opportunity Act, 42 U.S.C. Sec. 2000(e), et seq. and (or) Executive Order 11478, this court need only determine whether administrative due process has been accorded to the alleged discrimi-

## THE 1972 ACT

The Equal Employment Opportunity Act of 1972, Pub.L.No.92–261, extensively revised the employment discrimination provisions of Title VII of the Civil Rights Act of 1964.[6] The 1972 Act added a new § 717 to Title VII making it clear that the federal government is obligated to insure that all personnel actions be free from discrimination based on race, color, religion, sex or national origin, § 717(a); vesting in the United States Civil Service Commission the authority to enforce these prohibitions by appropriate remedies and through its rule-making power, § 717(b); and affording to persons aggrieved, a civil remedy in the district courts, § 717(c).[7] The interrelationship of § 717 with existing remedies for public and private employment discrimination, the cross-reference in § 717(d) to other provisions in Title VII,[8] and the legislative compromises in Congress which resulted in the present language, coincide to produce an unusually difficult complex of problems in statutory interpretation

An appropriate starting point is the framework of Title VII of the Civil Rights Act of 1964. As enacted, Title VII did not extend to employment in the

federal government,[9] but rather afforded a civil remedy in the district courts to victims of discrimination in the private sector once conciliation of their claims had been sought with the Equal Employment Opportunity Commission (EEOC).[10] However, the EEOC was given no authority to seek judicial enforcement of these conciliation agreements. Absent some means of enforcement, the EEOC, in the eyes of many members of Congress, failed even to come close to achieving the Act's goal of eliminating employment discrimination in the private sector. Those Congressmen advocating a strengthened EEOC pressed for a cease and desist enforcement authority to be vested in the Commission. However, out of compromise, the 1972 Act amending Title VII authorized only judicial enforcement of EEOC orders,[11] while preserving the existing civil remedy for an aggrieved private sector employee in the district court.[12]

Congress, in considering the amendment of Title VII, was also concerned with discrimination in public employment. Although Title VII of the 1964 Act had not been extended to federal employees, a number of other statutory provisions,[13] Executive Orders,[14] and Civ-

---

natee, i. e. whether a fair and open hearing with the right of confrontation and cross-examination was accorded on the discrimination charges." (5 App. at 1267–68).

6. Pub.L.No.88–352, 42 U.S.C. § 2000e et seq.

7. See notes 1–3 *supra*.

8. See note 3 *supra*.

9. The definition in 42 U.S.C. § 2000e(b) specifically excluded the federal government from coverage:

> "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5) . . . ."

10. Act of July 2, 1964, Pub.L.No.88–352, § 706(a)–(k), 78 Stat. 259–61.

11. § 706(f)(1), 42 U.S.C. § 2000e–5(f)(1), formerly, Pub.L.No.88–352, § 706(e), 78 Stat. 260. Both the original Senate and House proposals would have vested a cease and desist authority in the EEOC. See notes 54 & 60 *infra*.

12. § 706(f)(1)–(5), 42 U.S.C. § 2000e–5(f)(1)–(5).

13. *E. g.*, Federal Antidiscrimination in Employment Act, 5 U.S.C. § 7151 et seq. Section 7151 provides:

> "It is the policy of the United States to insure equal employment opportunities for employees without discrimination because of race, color, religion, sex, or national origin. The President shall use his existing authority to carry out this policy."

In addition, the prohibition against discrimination by the federal government based upon the due process clause of the fifth amendment was judicially recognized in Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

14. A policy of antidiscrimination in government employment has been assured by a series of Executive Orders dating back at least to 1948. See Exec. Order 9980, 3 C.F.R. 720

il Service Commission regulations,[15] all of which were in force by 1972, had already prohibited discrimination in such employment on account of race, color, religion, sex or national origin. There was, moreover, a longstanding back pay remedy available to federal workers.[16] Despite these provisions, the House Committee charged with the responsibility of preparing a revision of Title VII concluded that progress in eliminating discrimination in federal employment had been "far from satisfactory." [17] It attributed such lack of progress to structural defects in the procedures which the government regulations established for processing complaints,[18] and to a lack of confidence on the part of federal employees in the performance of the Civil Service Commission.[19] The principal defect in the prior system was that the very same federal agency charged with a discriminatory act conducted its own conciliation, investigation and until recently, its own adjudication of the claim.[20] Appeals from the final decision of an agency to the Civil Service Commission's Board of Appeals and Review, the House Report concluded, rarely resulted in a reversal of an agency deci-

(1948) [1943–48 Comp.]; Exec. Order 10590, 3 C.F.R. 237 (1955) [1954–58 Comp.]; Exec. Order 10925, 3 C.F.R. 448 (1961) [1959–63 Comp.]; Exec. Order 11246, 3 C.F.R. 339 (1965) [1964–65 Comp.]. Exec. Order 11478, 3 C.F.R. 803 (1969) [1966–70 Comp.], reported in 42 U.S.C. § 2000e note, became effective on August 7, 1969. The preamble to the Order states:

> "It has long been the policy of the United States Government to provide equal opportunity in Federal employment on the basis of merit and fitness and without discrimination because of race, color, religion, sex, or national origin. All recent Presidents have fully supported this policy, and have directed department and agency heads to adopt measures to make it a reality."

**15.** The Civil Service Commission regulations which implemented Executive Order 11478 became effective on January 1, 1971. 5 C.F.R. § 713.201 et seq.

**16.** Back Pay Act, 5 U.S.C. § 5596.

**17.** H.R.Rep.No.92–238, 92d Cong., 1st Sess. (1971), reprinted in 2 U.S.Code Cong. & Admin.News, p. 2158 (1972).

**18.** "A critical defect of the Federal equal employment program has been the failure of the complaint process. That process has impeded rather than advanced the goal of the elimination of discrimination in Federal employment. The defect, which existed under the old complaint procedure, was not corrected by the new complaint process. The new procedure, intended to provide for the informal resolution of complaints, has, in practice, denied employees adequate opportunity for impartial investigation and resolution of complaints."

2 U.S.Code Cong. & Admin.News, pp. 2158–59 (1972).

**19.** "Testimony reflected a general lack of confidence in the effectiveness of the com-plaint procedure on the part of Federal employees. Complainants were skeptical of the Civil Service Commission's record in obtaining just resolutions of complaints and adequate remedies. This has discouraged persons from filing complaints with the Commission for fear that it will only result in antagonizing their supervisors and impairing any hope of future advancement.

Aside from the inherent structural defects the Civil Service Commission has been plagued by a general lack of expertise in recognizing and isolating the various forms of discrimination which exist in the system. The revised directives to Federal agencies which the Civil Service Commission has issued are inadequate to meet the challenge of eliminating systemic discrimination. . ."

*Id.* at p. 2159.

**20.** "Under the revised procedure, effective July 1, 1969, the agency is still responsible for investigating and judging itself. Although the procedure provides for the appointment of a hearing examiner from an outside agency, the examiner does not have the authority to conduct an independent investigation. Further, the conclusions and findings of the examiner are in the nature of recommendations to the agency head who makes the final agency determination as to whether discrimination exists. Although the complaint procedure provides for an appeal to the Board of Appeals and Review in the Civil Service Commission, the record shows that the Board rarely reverses the agency decision.

The system, which permits the Civil Service Commission to sit in judgment over its own practices and procedures which themselves may raise questions of systemic discrimination, creates a built-in conflict-of-interest."

*Id.*

sion.[21] The House Committee on Education and Labor proposed, in H.R. 1746, to eliminate these deficiencies by vesting enforcement of the prohibition against discrimination in federal employment in the EEOC rather than in the Civil Service Commission, and by affording federal employees the same civil remedies which were afforded to employees in the private sector.[22]

While the House was considering H.R. 1746, the Senate Committee on Labor and Public Welfare was considering S. 2515, a bill addressed to the same issues. The Senate Report accompanying that bill, while recognizing that progress had been less than satisfactory, was more sanguine about what might be expected from the Civil Service Commission, and proposed to continue the antidiscrimination responsibility vested in the Commission by Executive Order 11478.[23] Despite their differences, however, the Senate Committee on Labor and Public Welfare, and the House Committee on Education and Labor were of like mind about the need for making a civil remedy in the courts available to federal employees who were dissatisfied with administrative review of their claims.[24] The provisions of § 717 with respect to the civil remedy as adopted in the final House and Senate versions are set forth in the margin.[25]

21. *Id.* at p. 2159.

22. The House Committee Report stated:

"Accordingly there can exist no justification for anything but a vigorous effort to accord Federal employees the same rights and impartial treatment which the law seeks to afford employees in the private sector." 2 U.S.Code Cong. & Admin.News, p. 2158 (1972).

The Committee's version of § 717 provides in part:

"(c) Within thirty days of receipt of notice given under subsection (b), the employee or applicant for employment, if aggrieved by the final disposition of his complaint, may file a civil action as provided in section 715, in which civil action the head of the executive department or agency, or the District of Columbia, as appropriate, shall be respondent.

(d) The provisions of section 715 shall govern civil actions brought hereunder.

(e) All functions of the Civil Service Commission which the Director of the Bureau of the Budget determines relate to nondiscrimination in government employment are transferred to the Equal Employment Opportunity Commission."

H.R.Rep.No.92–238, 92d Cong., 1st Sess. 56–57 (1971).

23. "The Civil Service Commission's primary responsibility over all personnel matters in the Government does create a built-in conflict of interest for examining the Government's equal employment opportunity program for structural defects which may result in a lack of true equal employment opportunity. Yet, the Committee was persuaded that the Civil Service Commission is sincere in its dedication to the principles of equal employment opportunity enunciated in Executive Order 11478 and that the Commission has the will and desire to overcome any such conflict of interest. In order to assist the Commission in accomplishing its goals and to make clear the Congressional expectation that the Commission will take those further steps which are necessary in order to satisfy the goals of Executive Order 11478, the Committee adopted in Section 707(b) of the bill specific requirements under which the Commission is to function in developing a comprehensive equal employment opportunity program."

S.Rep.No.92–415, 92d Cong., 1st Sess. 15 (1971).

24. "The testimony of the Civil Service Commission notwithstanding, the committee found that an aggrieved Federal employee does not have access to the courts. In many cases, the employee must overcome a U.S. Government defense of sovereign immunity or failure to exhaust administrative remedies with no certainty as to the steps required to exhaust such remedies. Moreover, the remedial authority of the Commission and the courts has also been in doubt. The provisions adopted by the committee will enable the Commission to grant full relief to aggrieved employees, or applicants, including back pay and immediate advancement as appropriate. *Aggrieved employees or applicants will also have the full rights available in the courts as are granted to individuals in the private sector under title VII.*"

*Id.* at 16 (emphasis supplied).

25. See note 22 *supra* for the final House version which is identical to its committee's version. 117 Cong.Rec. 31984 (1971). The final Senate version provided:

" '(c) Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection 717(a), or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a com-

In contrast to the conciliation provisions of the 1964 private civil remedy in Title VII, the House version would have permitted suits in the district court within thirty days of notice of an agency's disposition of claim. Because the House bill would thus have completely bypassed the appeal remedy before the Civil Service Commission's Board of Appeals and Review,[26] the civil remedy in the district court, of necessity, was the same trial *de novo* as in a private employment discrimination case. However, because the Senate Committee proposed to preserve the antidiscrimination enforcement authority of the Civil Service Commission, the Senate's version of § 717(c) made reference to the appeal remedy available before the Commission.[27] The Senate Committee report explains what was intended to be accomplished:

"The bill (section 717(c)) enables the aggrieved Federal employee (or applicant for employment) to file an action in the appropriate U.S. district court after either a final order by his agency or a final order of the Civil Service Commission or an appeal from an agency decision or order in any personnel action in which the issue of dis-

crimination on the basis of race, color, religion, sex or national origin has been raised by the aggrieved person. *It is intended that the employee have the option to go to the appropriate district court* or the District Court for the District of Columbia *after either the final decision within his agency* on his appeal from the personnel action complained of *or after an appropriate appeal to the Civil Service Commission or after the elapse of 180 days* from the filing of the initial complaint or appeal with the Civil Service Commission." (emphasis supplied)[28]

Thus in order to meet the substantial objections to the Civil Service Commission remedy, the Senate proposed to give public sector litigants the *option* of bypassing the Commission and seeking a judicial remedy at the outset. At the same time, those federal employees who had confidence in the Commission could appeal to it, but they would not thereby lose their right to an action in the district court if the Commission's decision was unsatisfactory.

The Conference Committee adopted the Senate's approach,[29] and § 717(c) as

plaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 706, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

'(d) The provisions of section 706(f) through (k), as applicable, shall govern civil actions brought hereunder.' "
118 Cong.Rec. 4948 (1972).

**26.** See note 22 *supra*.

**27.** See note 25 *supra*.

**28.** S.Rep.No.92–415, 92d Cong., 1st Sess. 16 (1971).

**29.** The Conference Report is not enlightening. It states:

"The Senate amendment provided that all personnel actions involving Federal employees be free from discrimination. This policy was to be enforced by the United States Civil Service Commission. Each agency of the Federal Government would be responsible for establishing an internal grievance procedure and programs to train personnel so as to enable them to advance under the supervision of the Civil Service Commission. If final action had been taken by an agency of the Civil Service Commission, an aggrieved party could bring a civil action under the provisions of section 706. The House bill did not cover Federal employees. The House receded. In providing the statutory basis for such appeal or court access, it is not the intent of the Committee to subordinate any discretionary authority or final judgment now reposed in agency heads by, or under statute for national security reasons in the interests of the United States." S.Rep.No.92–681, 92d Cong., 2d Sess. (1972), reprinted in 2 U.S.Code Cong. & Admin.News, p. 2185 (1972).

enacted, is identical in language to S. 2515 to which the Senate Report, quoted above, refers. The Senate Report would appear, then, to be the authoritative expression of Congressional intent. As will be developed hereafter, the option as to remedies which § 717(c) plainly affords, significantly bears upon the scope of review issues considered by the district court.

## RETROACTIVITY OF § 717

Because the acts of discrimination complained of by Sperling took place before March 24, 1972, the effective date of the 1972 amendments, the government disputes the applicability of § 717 to this case. Sperling contends that because the statute is procedural and remedial in nature, it should be given retroactive application. Thus, since the administrative proceeding in his case was still pending on the effective date of the amendments, and was not concluded until July 15, 1972, Sperling urges that he is entitled to the civil remedy that § 717(c) affords. The question of the retroactivity of § 717 has already generated extensive litigation. The Second,[30] Fourth[31] and District of Columbia[32] Circuits have given the Act retroactive application. The Sixth Circuit, reasoning that waivers of sovereign immunity should be strictly construed, has held that it should have prospective application only.[33] However, long before the enactment of § 717, the Third Circuit had concluded that other jurisdictional

grants waived the federal government's sovereign immunity as a bar to the review of federal employment decisions.[34] A back pay award was available against the federal government before the enactment of § 717. See Back Pay Act of 1966, 5 U.S.C. § 5596. That statute as well as several of its predecessors which were to like effect have been held to apply retroactively.[35]

We do not find the Sixth Circuit's sovereign immunity rationale for prospective application of § 717 persuasive in light of the longstanding waiver of immunity in the federal employment context. Whatever little may be said in support of a rule of strict construction of waivers of sovereign immunity in new fields, nothing can be said in favor of strict construction of a waiver in a field where it has long existed. No other reason has been suggested for a prospective application of § 717, and we find Judge Butzner's analysis in the Fourth Circuit's decision persuasive. He points to the legislative history of the statute, which indicates that Congress did not need to create new substantive rights for federal employees when it enacted § 717. Rather, Judge Butzner reasons that this provision was designed only to make judicial enforcement of longstanding federal substantive policies against employment discrimination more certain and more effective than in the past. Section 717, he concludes, is a classic example of a procedural or remedial statute applicable to

This discussion actually misstates the thrust of the House bill. It confirms however, that the Senate version of § 717(c) was adopted. The Conference Report's version of § 717(c) is identical with that of the Act's. See S.Rep.No. 92–681, 92d Cong., 2d Sess. 11 (1972).

**30.** Brown v. Gen. Servs. Admin., 507 F.2d 1300 (2d Cir. 1974), pet. for cert. filed, 43 U.S.L.W. 3430 (U.S. Dec. 20, 1974) [References to "F.E.P. Cas." where cited, are to the Bureau of National Affairs' Fair Employment Practices Service].

**31.** Koger v. Ball, 497 F.2d 702 (4th Cir. 1974).

**32.** Womack v. Lynn, 164 U.S.App.D.C. 198, 504 F.2d 267 (1974).

**33.** Place v. Weinberger, 497 F.2d 412 (6th Cir. 1974), cert. denied, 419 U.S. 1040, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974).

**34.** *Compare* Chaudoin v. Atkinson, 494 F.2d 1323 (3rd Cir. 1974); Iannarelli v. Morton, 463 F.2d 179 (3d Cir. 1972); Rosenman v. Levbarg, 435 F.2d 1286 (3d Cir. 1970); DeLong v. Hampton, 422 F.2d 21 (3d Cir. 1970); Charlton v. United States, 412 F.2d 390 (3d Cir. 1969), *with* Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970); Manhattan-Bronx Postal Union v. Gronouski, 121 U.S. App.D.C. 321, 350 F.2d 451 (1965).

**35.** Koger v. Ball, 497 F.2d 702, 705 (4th Cir. 1974).

cases pending at the time of enactment.[36] We agree with Judge Butzner and with those circuits which have held that § 717 applies to actions where an administrative claim was pending at the time of its enactment. Literally the statute applies to the case *sub judice*, since Sperling's suit was filed within thirty days of his receipt of notice of the Commission's action. Being procedural and remedial in nature, the Act governs the claims disposed of by that administrative decision.[37]

## SCOPE OF JUDICIAL REVIEW

The district court, while expressing doubt as to the applicability of § 717, concluded in the alternative that judicial review under the Act was limited to determining whether or not administrative due process had been afforded.[38] Neither the text of the statute nor any clues which may be divined from its legislative history support such a conclusion. The proper role of the district court in a § 717 case has, like the retroactivity issue, produced abundant litigation.[39] None of the cases recommend themselves to us as a completely satisfactory explanation of the district court's role in § 717 cases. Many proceed on the assumption that no real change in the role of the judiciary was intended. But that approach simply belies the plain language of the statute. Section 717(d) provides:

"The provisions of section 706(f) through (k), as applicable, shall govern civil actions brought hereunder."

36. *Id.* at 706.

37. Thus the district court had jurisdiction under 42 U.S.C. § 2000e–5(f)(3) to consider Sperling's § 717 claim for relief. We need not decide whether and to what extent, that jurisdictional grant duplicates those in 28 U.S.C. §§ 1331, 1343(4).

38. See note 5 *supra.*

39. The decisions are in conflict as to whether § 717(c) requires a trial *de novo* in the district court. Those courts which have found such a remedy in the Act have tended to be located in areas where government installations are few, and where as a consequence, § 717 litigation has been light. *E. g.*, Hunt v. Schlesinger, 389 F.Supp. 725 (W.D.Tenn.1974); Robinson v. Klassen, 9 F.E.P.Cas. 84 (E.D.Ark.1974); Griffin v. Postal Serv., 385 F.Supp. 274 (M.D.Fla. 1973); Jackson v. Civ. Serv. Comm., 379 F.Supp. 589 (S.D.Texas 1973). However, a district court in the Southern District of New York, faced with a potentially large number of litigious federal employees has also held in favor of a trial *de novo.* Henderson v. Defense Contract Admin. Servs. Region, 370 F.Supp. 180 (S.D.N.Y.1973). In addition Judge Wollenberg writing in Thompson v. Dept. of Justice, 360 F.Supp. 255 (N.D.Cal.1973), had originally decided that the Act required a trial *de novo*, and then reversed his position, accepting the contrary view espoused principally by the courts in the District of Columbia Circuit. Thompson v. Dept. of Justice, 372 F.Supp. 762 (N.D.Cal.1974). *See also* McLaughlin v. Callaway, 382 F.Supp. 885 (S.D. Ala.1974) (finding a discretionary right to a trial *de novo*).

Judge Gesell's opinion in Hackley v. Johnson, 360 F.Supp. 1247 (D.D.C.1973), appeal docketed, No. 73–2072 (D.C.Cir., Sept. 7, 1973), is the leading decision rejecting a *trial de novo* in all cases brought under § 717(c). The District of Columbia of course has the highest concentration of federal employees anywhere in the nation, and Judge Gesell noted that a brief review of the civil docket of the District Court for the District of Columbia revealed no less than nineteen § 717(c) claims awaiting disposition at the time *Hackley* was decided. 360 F.Supp. at 1249 n. 2.

The only circuit decision to have reached this issue agreed with Judge Gesell's position. Salone v. United States, 511 F.2d 902 (10th Cir. 1975). Other district court opinions which have followed his lead include Allen v. Veterans Admin., 10 F.E.P.Cas. 195 (W.D.Pa.1974); Baca v. Butz, 376 F.Supp. 1005 (D.N.M.1974); Cates v. Johnson, 377 F.Supp. 1145 (W.D.Pa., July 18, 1974), appeal docketed, No. 74–2079 (3d Cir. 1974); Eastland v. TVA, 8 F.E.P. Cas. 1226 (N.D.Ala.1974); Ficklin v. Sabatini, 383 F.Supp. 1147 (E.D.Pa.1974); Guilday v. Dept. of Justice, 385 F.Supp. 1096 (D.Del.1974); Haire v. Callaway, 385 F.Supp. 309 (E.D.Mo. 1974); Handy v. Gayler, 364 F.Supp. 676 (D.Md.1973); Johnson v. Postal Serv., 364 F.Supp. 37 (N.D.Fla.1973), aff'd per curiam, 497 F.2d 128 (5th Cir. 1974); Pointer v. Sampson, 62 F.R.D. 689 (D.D.C.1974); Pendleton v. Schlesinger, 8 F.E.P. 853 (D.D.C.1974); Roberts v. Mumford, 8 F.E.P.Cas. 1195 (D.D.C. 1974); Rooney v. Saxbe, 8 F.E.P.Cas. 933 (D.D.C.1974); Smith v. Snyder, 381 F.Supp. 1083 (E.D.Pa.1974); Spencer v. Schlesinger, 374 F.Supp. 840 (D.D.C.1974).

Outside of the District of Columbia, the opinions would appear to be about evenly divided on the issue.

Section 706(f) through (k), 42 U.S.C. § 2000e–5(f)–(k), set forth the remedies available in the district court to private litigants in nonfederal employment. The Supreme Court has held that actions by private litigants under § 706 are considered *de novo* in the district court even if they follow EEOC proceedings.[40] Indeed the language of § 706 hardly admits of any other interpretation. Thus § 706(f) provides:

"(4) It shall be the duty of the chief judge of the district . . . to designate a judge in such district to *hear and determine* the case.

. . .

(5) It shall be the duty of the judge designated . . . *to assign the case for hearing* at the earliest practicable date . . .." (emphasis supplied)

and § 706(g) provides:

"If the court *finds* that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice . . . [it] may enjoin the respondent . . .." (emphasis supplied)

Certainly nothing in § 706 suggests any role for the district court other than that of making an independent factual determination of the alleged fact of employment discrimination. There is no restrictive language such as is found in 28 U.S.C. § 2347(a) dealing with the review of final administrative agency orders, or in 5 U.S.C. § 702 et seq. dealing with district court review of agency adjudications. If the district court's role in

§ 717(c) federal employment discrimination cases is other than *de novo*, the limitation must be found elsewhere than in the remedy provisions of § 706.

Section 717 itself is the only other provision to which we have been referred that purportedly limits the district court's role. Although a number of district courts, and at least one circuit court,[41] claim to have found a limitation of the district court's § 706 jurisdiction in § 717 (or have merely assumed it) we have great difficulty with this approach. Our hesitancy in accepting that analysis is attributable to the fact that in some § 717(c) cases the trial in the district court *must* be *de novo*. Section 717(c) provides that if a discrimination charge is filed with the employing agency by a federal employee, and the agency has not made a final disposition of the complaint within 180 days, the employee may then file suit in the district court. Obviously in such a suit, one would have to make a record in the district court upon which the court could then adduce the facts concerning the claim. From this class of § 717(c) cases we move to the situation where the employing agency has already processed and rejected a discrimination claim. Here, the plain language of § 717(c) itself, as well as the Senate Report's discussion of that provision,[42] make clear that the employee has the *option* of filing suit in the district court *or* appealing to the Civil Service Commission.[43] If suit has been filed the record made by the employing agency would, at a minimum, be evidentiary in the district court. In some cases summary judgment, pursuant to Rule 56

---

**40.** *See, e. g.*, Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Fekete v. U. S. Steel Corp., 424 F.2d 331 (3d Cir. 1970).

**41.** Salone v. United States, 511 F.2d 902 (10th Cir. 1975). See note 39 *supra*, for a listing of these decisions.

**42.** See text accompanying note 28 *supra*.

**43.** In Brown v. Gen. Servs. Admin., 507 F.2d 1300 (2d Cir. 1974), pet. for cert. filed, 43 U.S.

L.W. 3430 (U.S. Dec. 20, 1974), the Second Circuit suggests that a federal employee must exhaust the remedy of an appeal to the Civil Service Commission's Board of Appeals and Review before being permitted to file a § 717(c) suit. Compare the several views expressed on that issue in Perm v. Schlesinger, 490 F.2d 700 (5th Cir. 1973).

We are unable to see how such an exhaustion rule can be imposed in the face of the express provisions in § 717(c), and in light of the language of the Senate Report. See text accompanying note 28 *supra*.

Fed.R.Civ.P., would undoubtedly be appropriate.

If the aggrieved federal employee selects the second option, appeals to the Civil Service Commission, and then seeks a private civil remedy, the only statutory reference to the district court's role is the cross-reference quoted above in § 717(d) to the provisions in § 706(f) through (k) "as applicable." Those courts which have concluded that a trial *de novo* is not available in a case where an appeal has been taken to the Commission have found room for that construction in the use of the words "as applicable."[44] It is difficult to comprehend how those words can support that construction. Such a reading would seem to imply that there are some cases where all of § 706, including even the jurisdictional grant in § 706(f)(3), might not be applicable.[45] Yet the same courts which have said that trial *de novo* is not available where an agency record has been made and appeal taken to the Commission, have assumed jurisdiction under § 706(f)(3). There is no language in § 706(f) which can be relied upon to exclude a trial *de novo* in any case. If the "as applicable" language were intended to exclude a trial *de novo* in all cases where an agency record was made, it would have to be so because the § 706 civil action remedy was somehow inapplicable, and therefore judicial review dependent upon some other remedy and statutory grant of jurisdiction.

More significantly, the inclusion of the words "as applicable" in § 717(d) could not have had any reference to the existence of a Civil Service Commission appeal procedure, since the "as applicable" language was included in the Senate bill S. 2515 long before the decision was made in the Senate Committee to amend the original version of the bill and provide for a CSC role in discrimination.[46] Neither under Title VII as enacted in 1964, nor under any version of the 1972 proposed amendments was it ever contemplated that action by the EEOC would deprive a private sector litigant of a trial *de novo*. If the words "as applicable" were not so intended when the bill referred to the EEOC, there is no reason to conclude that they took on a new meaning when the CSC was substituted for the EEOC with respect to federal employees.[47]

With the exception of the first class of § 717(c) cases discussed above, in which a federal employing agency failed to act on a complaint for 180 days and thereby necessitated judicial fact-finding in a *de novo* proceeding in the district court, a construction limiting the district court's role to review of the administrative

---

**44.** See cases in note 39 *supra*.

**45.** Section 706(f)(3), 42 U.S.C. § 2000e–5(f)(3) provides:

"Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought."

**46.** See notes 61 to 65 *infra* and accompanying text.

**47.** See notes 60 and 61 *infra* and accompanying text. By way of contrast, the House version as reported out of committee included no words of limitation in § 717(d). See note 22 *supra*.

The Conference Report states:
"The provisions of sections 706(f) through (k), concerning private civil actions by aggrieved persons, are made applicable to aggrieved Federal employees or applicants for employment. . . ." Conference Report, S.Rep.No.92–681, 92d Cong., 2d Sess. (1972), reprinted in Senate Comm. on Labor and Public Welfare, Legislative History of the Equal Employment Opportunity Act of 1972, 92d Cong., 2d Sess. 1851 (Comm.Print 1972).

record would leave the law concerning the judicial review of federal agency employment decisions exactly where it was before a § 717 was enacted, at least in circuits such as ours, which did not recognize a sovereign immunity bar to judicial review.[48] In the other actions referable to the district court pursuant to § 717(c) there would be at least a record of fact-finding made by the employing agency, and in the situation where an appeal was taken to the CSC, the record made by the Board of Appeal and Review as well. It takes we think, a strained reading of § 717(c) to suggest that in three of the four situations in which a suit is explicitly permitted, Congress intended no advance beyond the existing law.

The leading case limiting aggrieved public employees to district court review based on the administrative record in a § 717(c) suit, rather than granting a trial de novo is Judge Gesell's decision in Hackley v. Johnson.[49] This opinion, oft-quoted as a result of the concentration of § 717(c) litigation in the District of Columbia Circuit, concludes that it was not the congressional intent to provide a de novo trial in all such proceedings.[50]

In so holding, Hackley misreads the Act's legislative history.

The House was the first branch of Congress to move on its version of the Act. On June 21, 1971, H.R. 1746, a bill entitled the "Equal Employment Opportunities Enforcement Act of 1971" was reported out of the House Committee on Education and Labor without amendment and with a recommendation for its passage.[51] As we have already noted, the House Report was highly critical of the Civil Service Commission's performance in eliminating discrimination in federal employment, and sought to correct this deficiency by transferring its enforcement functions to the EEOC.[52] And as already noted, the bill extended Title VII for the first time to federal employees by providing for a private civil remedy in the district courts.[53] However, the principal feature of H.R. 1746 was its provision for a judicially enforceable cease and desist authority to be vested in the EEOC.[54] It was this latter provision which sparked the most controversy when the bill was brought to the House floor for debate on September 15, 1971.

**48.** See cases in note 34 supra. In circuits such as the Eighth, which barred judicial review on sovereign immunity grounds, it could be argued that § 717(c) was a waiver which permitted conventional review pursuant to other statutes in cases where § 717 was not applicable.

**49.** 360 F.Supp. 1247 (D.D.C.1973), appeal docketed, No. 73–2072 (D.C.Cir., Sept. 7, 1973). See discussion of case law in note 39 supra.

**50.** 360 F.Supp. at 1250–52.

**51.** H.R.Rep.No.92–238, 92d Cong., 1st Sess. 1 (1971). The House Committee's Report is reprinted in 2 U.S.Code Cong. & Admin.News, p. 2137 (1972).

**52.** The House Committee's version of § 717(b) provided:

"The Equal Employment Opportunity Commission shall have authority to enforce the provision of subsection (a) and shall issue such rules, regulations, orders, and instructions as it deems necessary and appropriate to carry out its responsibilities hereunder, and the head of each executive department and agency and the appropriate officers of the District of Columbia shall comply with such rules, regulations, orders, and instructions; Provided, That such rules and regulations shall provide that an employee or applicant for employment shall be notified of any final action taken on any complaint filed by him thereunder."
H.R.Rep.No.92–238, 92d Cong., 1st Sess. 56 (1971).

**53.** See note 22 supra.

**54.** The House Committee's version of § 706(h) provided in part:

"If the Commission finds that the respondent has engaged in an unlawful employment practice, the Commission shall state its findings of fact and shall issue and cause to be served on the respondent and the person or persons aggrieved by such unlawful employment practice an order requiring the respondent to cease and desist from such unlawful employment practice and to take such affirmative action, including reinstatement or hiring of employees, with or without backpay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), as will effectuate the policies of this title . . .."
117 Cong.Rec. 31982 (1971).

Opponents of the committee bill argued that the EEOC's cease and desist authority denied due process safeguards to private employers. They urged instead House passage of H.R. 9247 as an amendment in the nature of a substitute to H.R. 1746.[55] The "Erlenborn substitute," as it was called, proposed transferring enforcement powers to the courts rather than vesting the EEOC with a cease and desist power.[56] Following a second day of debate on September 16, 1971, the House voted 202–197 to consider H.R. 1746 as amended by the Erlenborn substitute,[57] and finally passed the bill in that amended form by a vote of 285 to 108.[58]

Two days earlier, the Senate version of the bill, S. 2515, was introduced on the floor of the Senate in behalf of its cosponsors, Senators Williams of New Jersey and Kennedy of Massachusetts, and then referred to the Senate's Committee on Labor and Public Welfare for study.[59] Like the original version of the House bill, S. 2515 sought to provide the EEOC with a method of enforcing the rights of private sector employees who had been subjected to unlawful employment practices. And like the House's Committee bill, the key feature of the Senate version was a cease and desist authority vested in the EEOC.[60] The bill, as referrd to committee, extended Title VII coverage to federal employees with enforcement authority in the EEOC, and provided for a private civil action in the district courts for aggrieved employees.[61]

---

**55.** The first day of debate of the bill on the floor of the House including the discussion of the "Erlenborn substitute" is found in 117 Cong.Rec. 31958–85 (1971).

**56.** The "Erlenborn substitute" version of § 706(h) provided in part:

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice)."

117 Cong.Rec. 31980 (1971).

**57.** *Id.* at 32111–12.

**58.** *Id.* at 32113.

**59.** *Id.* at 31711.

**60.** The original version of § 717(h) as referred to the Senate Committee provided in part:

"If the Commission finds that the respondent has engaged in an unlawful employment practice, the Commission shall state its findings of fact and shall issue and cause to be served on the respondent and the person or persons aggrieved by such unlawful employment practice an order requiring the respondent to cease and desist from such unlawful practice and to take such affirmative action, including reinstatement or hiring of employees, with or without backpay (payable by the employer, employment agency,

or labor organizations, as the case may be, responsible for the unlawful employment practice), as will effectuate the policies of this title . . .."

117 Cong.Rec. 31712 (1971).

**61.** 117 Cong.Rec. 31715 (1971). Section 717(b)–(d) as referred to the Senate Committee provides:

"(b) The Equal Employment Opportunity Commission shall have authority to enforce the provision of subsection (a) and shall issue such rules, regulations, orders, and instructions as it deems necessary and appropriate to carry out its responsibilities hereunder, and the head of each executive department and agency and the appropriate officers of the District of Columbia shall comply with such rules, regulations, orders, and instructions: *Provided,* That such rules and regulations shall provide that an employee or applicant for employment shall be notified of any final action on any complaint filed by him thereunder.

(c) Within thirty days of receipt of notice, given pursuant to subsection (b), of final action taken on a complaint of discrimination based on race, color, religion, sex, or national origin, or after ninety days from the filing of the initial charge until such time as final action may be taken, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 706(q), in which civil action the head of the executive department or agency, or the District of Columbia, as appropriate, shall be the respondent.

On October 28, 1971 the Senate Committee on Labor and Public Welfare reported out S. 2515 favorably, and recommended its passage subject to an amendment which extensively altered the § 717 proposal.[62] At the time the bill had been originally introduced to the Senate, Senator Kennedy as one of its cosponsors, had expressed concern over the bill's transfer of all equal employment opportunity functions from the Civil Service Commission to the EEOC. He opposed the transfer on two grounds: that the EEOC was already overworked in processing private sector claims, and that it was unwise to place the nation's entire equal opportunity effort in a single agency's hands.[63] As a result, an amended version of § 717 was added in committee at the behest of the bipartisan efforts of Senator Kennedy and Senators Cranston of California and Dominick of Colorado.[64] Both the Report, as it relates to a continuing Civil Service Commission role, and the Senate committee version of § 717(c), have already been set out in the margin.[65] Because the Senate was preoccupied with other pressing legislative matters, however, debate on the floor was delayed until the new year.

On January 18, 1972, the Senate Committee's version of S. 2515 was brought to the floor. It will be recalled that the House had already voted against a cease and desist authority in the EEOC in approving their version of the bill.[66] The Senate after four weeks of lengthy debate, followed suit and adopted the so-called "Dominick amendment" which also substituted EEOC enforcement through the courts.[67] However, opponents of the bill, led by Senator Allen of Alabama, continued to filibuster against its passage, even after the Senate's approval of the Dominick amendment.[68] On February 22, 1972, following two unsuccessful attempts at cloture, two-thirds of the Senate voted to limit further debate.[69] Before finally voting on S. 2515, the bill's sponsors attempted to provide their colleagues with an analysis of its salient features. It is at this point, that the legislative history presents some difficulties.

Senator Williams, one of the bill's original sponsors, and its manager on the floor provided a summary of § 717(c):

"Finally, written expressly into the law is a provision enabling an aggrieved Federal employee to file an action in U. S. District Court for a review of the administrative proceeding record after a final order by his agency or by the Civil Service Commission, if he is dissatisfied with that decision. Previously, there have been unrealistically high barriers which prevented or discouraged a Federal employee from taking a case to court. This will no longer be the case. There is no reason why a Federal employee should not have the same private right of action enjoyed by individuals in the private sector, and I believe that the committee has acted wisely in this regard." [70]

In support of his statement, Senator Williams had a more lengthy analysis printed in the Record. This analysis was taken almost verbatim from the Senate Committee Report. There were however, some alterations of language which are significant for our purposes. We

---

(d) The provisions of section 706(q) through (w), as applicable, shall govern civil actions brought hereunder."
117 Cong.Rec. 31715 (1971).

**62.** S.Rep.No.92–415, 92d Cong., 1st Sess. 1 (1971).

**63.** 117 Cong.Rec. 31718 (1971).

**64.** 118 Cong.Rec. 4921 (1972) (Remarks of Senator Cranston).

**65.** See notes 23 and 25 *supra*. The final Senate version as quoted in note 25 *supra* is identical to the amended version reported out by the Senate Committee. *Compare* S.Rep.No. 92–415, 92d Cong., 1st Sess. 72 (1971), *with* 118 Cong.Rec. 4948 (1972).

**66.** See text accompanying notes 55–58 *supra*.

**67.** 118 Cong.Rec. 4907 (1972).

**68.** *Id.* at 4907–08 (Remarks of Senators Allen and Williams).

**69.** *Id.* at 4811–12.

**70.** *Id.* at 4922.

have set out the Williams analysis side-by-side with the Committee analysis in the margin to indicate these alterations, placing in brackets, and italicizing that wording in the Williams analysis which differs from the Committee's version.[71] It would appear that the subtle change in nuance, quite clearly reflected in Senator Williams' alterations, was intended to emphasize the view that § 717(c) was to provide for only administrative review in the district court. Although deference is due to the Williams analysis in view of his role as cosponsor and floor manager of the bill, we believe the analysis in the Senate Report representing the consensus of the committee charged with studying the bill, more accurately reflects the congressional intent.

That the Senate Report should be regarded as explicative of congressional intent rather than the Williams view, is further demonstrated by Senator Cranston's insertion into the Record of the Committee Report's discussion which we have already quoted in the margin alongside the Williams analysis.[72] Sena-

---

**71.** *Williams Analysis*

"An important adjunct to the strengthened Civil Service Commission responsibilities is the statutory provision of a private right of action [*of review of the agency proceedings*] in the courts by Federal employees who are not satisfied with the Agency or Commission decision.

The testimony of the Civil Service Commission notwithstanding, the Committee found that an aggrieved Federal employee does not have access to the courts. In many cases, the employee must overcome a U. S. Government defense of sovereign immunity or failure to exhaust administrative remedies with no certainty as to the steps required to exhaust such remedies. Moreover, the remedial authority of the Commission and the courts has also been in doubt. The provisions adopted by the Committee will enable the Commission to grant full relief to aggrieved employees, or applicants, including back pay and immediate advancement as appropriate. [*Aggrieved employees or applicants will also have the full rights of review available in the courts.*]"

118 Cong.Rec. 4923 (1972).

*Senate Committee Report*

"An important adjunct to the strengthened Civil Service Commission responsibilities is the statutory provision of a private right of action in the courts by Federal employees who are not satisfied with the agency or Commission decision.

The testimony of the Civil Service Commission notwithstanding, the committee found that an aggrieved Federal employee does not have access to the courts. In many cases, the employee must overcome a U. S. Government defense of sovereign immunity or failure to exhaust administrative remedies with no certainty as to the steps required to exhaust such remedies. Moreover, the remedial authority of the Commission and the courts has also been in doubt. The provisions adopted by the committee will enable the Commission to grant full relief to aggrieved employees, or applicants, including back pay and immediate advancement as appropriate. Aggrieved employees or applicants will also have the full rights available in the courts as are granted to individuals in the private sector under title VII."
S.Rep.No.92–415, 92d Cong., 1st Sess. 16–17 (1971).

---

**72.** 118 Cong.Rec. 4938 (1972). Senator Cranston's position has been less than unequivocal. Judge Gesell, referring to Cranston's remarks as reported in the daily edition of the Congressional Record concluded that Cranston had taken a similar position to Williams. 360 F.Supp. at 1252 n. 7. However, this conclusion is somewhat misleading. Following Senator Williams' remarks, and before inserting the Committee Report's discussion into the Record, 118 Cong.Rec. 4938 (1972), Cranston purportedly made the following remarks concerning the operation of § 717(c):

"For the first time, [it will] permit Federal employees to sue the Federal Government in discrimination cases—under the theory of Federal sovereign immunity, courts had not generally allowed such suits—and to bring suit either prior to or after CSC review of the agency EEO decision in the case. As with other cases brought under title VII of the Civil Rights Act of 1964, Federal district court review *would be based* on the agency and/or CSC record and would *not be a trial de novo*." (emphasis supplied).

It was this version of Senator Cranston's remarks which Judge Gesell referred to in *Hackley*, and which was printed in the daily edition of the Record, 118 Cong.Rec. S2287 (daily ed. Feb. 22, 1972), and later reprinted in the Senate's compilation of the Act's legislative history. Senate Comm. on Labor and Public Welfare, Legislative History of the Equal Employment Opportunity Act of 1972, 92d Cong., 2d Sess. 1744 (Comm.Print 1972).

Almost a year later, and some ten months after passage of the Act, Senator Cranston corrected what he described as an "error" and an "incorrect version" of the statement in the above quote.

tor Cranston, it will be recalled, had been instrumental in amending § 717 while S. 2515 was in committee, and it was the committee's amendment of § 717 which was the version debated on the floor of the Senate. Following the conclusion of debate, the Senate passed the bill by a vote of 73 to 16.[73]

Our reading of the legislative history leads us to the conclusion that it was Congress' intent to provide an aggrieved federal employee with as full a panoply of procedural remedies in the district court as those afforded a private sector litigant. Judge Gesell's reliance in *Hackley* on Senator Williams' statement and analysis of the bill was misplaced, and his conclusion that a trial *de novo* is not mandated was erroneous.[74] We hold therefore that the statutory language of the Act, as well as its legislative history, indicates a right to a trial *de novo* in the district court when suit is brought by an aggrieved federal employee pursuant to § 717(c).

## THE PLAINTIFF'S BURDEN

Having concluded that there is no statutory warrant for assigning the district court a different role in a § 717 case on the basis of either the absence or presence of an agency record, and also having concluded that the Act mandates a trial *de novo* in all cases, we next consider the function of the agency record in the district court proceeding. As we have discussed earlier, in most instances a discrimination complaint will have already have been the subject of agency review before the aggrieved employee brings suit under § 717(c). In the district court proceeding, as in any civil action, the employee has the burden of proving his allegations of agency discrimination. In this regard the agency record will have evidentiary value. It

"Unfortunately, Mr. President, the word 'not' was misplaced in the last sentence of the material I just quoted. I have called this to the attention of the appropriate officers, and the bound volume of the Congressional Record, which I understand will not be available for almost a year, will set forth this sentence in the correct manner as follows:

As with other cases brought under title VII of the Civil Rights Act of 1964, Federal district court review *would not be based* on the agency and/or CSC record and *would be a trial de novo.* [emphasis supplied]

I hope that this correction will set the Record straight and that my calling attention to it today will avoid any misplaced reliance on the incorrect version as originally printed in the Congressional Record of February 22, 1972."

119 Cong.Rec. S1219 (daily ed. Jan. 23, 1973). This corrected version of the statement indicating a right to a trial *de novo* appears in the final bound volume of the Record, 118 Cong. Rec. 4929 (1972), in its appropriate place in the final Senate debate on February 22, 1972. Reference to the correction, however, is not made either at this point in the bound volume, nor is Cranston's statement of correction even included on the corresponding page in the bound volume a year later. See 119 Cong.Rec. 2016 (1973).

Because of the anomalous nature of Senator Cranston's remarks we do not emphasize their importance or place reliance upon them in interpreting the Act's legislative history. How-

ever, Cranston's statement as corrected is at least internally consistent with the position set forth in the Senate Committee Report which he had placed in the Record, and to that extent cannot be read as supportive of the Williams view. Neither the Williams, nor the Cranston statements can be given the same weight as the Committee Report.

**73.** 118 Cong.Rec. 4944 (1972). Following the Senate's passage of S. 2515, the bill went to a conference committee to resolve differences with the House bill, H.R. 1746. After amendment by the conference committee, the final version, which made no changes in § 717 from the final Senate proposal, was reported out to both houses for final passage. Because the House had passed H.R. 1746 before the Senate had acted on its own bill, it was the House bill as amended which was transmitted to Congress for approval. The Senate approved the bill on March 6, 1972, followed by the House on March 8, 1972. The Conference Report is found in S.Rep.No.92–681, 92d Cong., 2d Sess. (1972), and is reprinted in part in 2 U.S.Code Cong. & Admin.News, p. 2179 (1972).

On March 24, 1972 the Equal Employment Opportunity Act of 1972 took effect.

**74.** For analysis of Judge Gesell's opinion see, Comment, Hackley v. Johnson: The Federal Employee's Right to Trial De Novo Review of Civil Service Discrimination Determinations, 123 U.Pa.L.Rev. 206 (1974). The author concludes that a "close analysis of the language [of 717(c)] suggests that a trial de novo was intended." *Id.* at 208.

may well establish that there is no genuine fact issue as to the absence of discrimination. In such a case summary judgment is appropriate. If, however, there is a genuine fact issue, that must be resolved by the district court pursuant to the Federal Rules of Civil Procedure. However, the Federal Rules do not specifically instruct the district court as to the proper standard of review to be applied to the agency's fact-finding record, nor does the language of § 717(c) itself enlighten us in this regard.

Among those decisions which have considered the appropriate standard of judicial review under § 717(c), the two opinions which most thoughtfully address the problem in the context of an agency record which has rejected a discrimination claim, are those of Judge Gesell in Hackley v. Johnson,[75] and Judge Caleb Wright in Guilday v. Department of Justice.[76] Both opinions reject the position that § 717(c) represented no advance beyond the previously existing law. Both reject the contention that the judicial role is limited to "substantial evidence" review in those cases where an agency record exists.[77] They reject, a fortiori, the position of the district court in this case that judicial review in a § 717 case is narrower still, being an inquiry limited solely to a consideration of administrative due process.

In Hackley, Judge Gesell declined to accept the plaintiff's position that in every § 717(c) case a district court evidentiary hearing was required, and dismissed as well the government's position that the district court was limited to substantial evidence review.

"The district court is required by the Act to examine the administrative record with utmost care. If it determines that an absence of discrimination is affirmatively established by the *clear weight of the evidence* in the record, *no new trial* is required. If this exacting standard is not met, the Court shall, in its discretion, as appropriate remand, take testimony to supplement the administrative record, or grant the plaintiff relief on the administrative record." (emphasis supplied).[78]

Judge Gesell's approach requires that the district court examine the administrative record and determine if on that record, by the clear weight of the evidence,[79] the government is entitled to a judgment. If not, he suggests, the district court may in its discretion either remand or take further testimony. The more attractive course to hard-pressed district court judges seems obvious.

But remand to whom? If a § 717(c) suit is commenced after an adverse employing agency decision, one would suppose that the remand would properly be to the employing agency. If the suit is commenced after a decision by the Civil Service Commission's Board of Appeals and Review,[80] a remand to it would require a second remand by the Board to the employing agency for the purpose of further fact finding. Entirely aside from the absence of any statutory authority for a district court to direct either a single or a double remand to an executive department agency for the purpose of taking testimony,[81] there is the underlying issue of credibility. The motivational criteria that may color agency decisions on employment or promotion cannot, even in the computer age, be quantified, and motivation is

**75.** 360 F.Supp. 1247 (D.D.C.1973).

**76.** 385 F.Supp. 1096 (D.Del.1974).

**77.** 360 F.Supp. at 1252–53; 385 F.Supp. at 1099–1102.

**78.** 360 F.Supp. at 1252.

**79.** The classic trichotomy is proof beyond a reasonable doubt, clear and convincing proof, or proof by a preponderance of the evidence. It is unclear where the "clear weight" test lies between the reasonable doubt and the preponderance of evidence standards, or whether in fact, it makes any difference.

**80.** § 717(c); 5 C.F.R. § 713.231 et seq.

**81.** Compare with the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. Remand from the district court to the administrative agency is permitted under 5 U.S.C. § 706.

what § 717 is all about. A remand for a decision on motivation, which shields the ultimate trier of fact from a face to face confrontation with those witnesses who were exposed to the events, does not seem consistent with the rather clear policy decision implicit in the enactment of § 717. That policy decision, it seems to us, was that the executive branch agencies would no longer be the judges of their own motivation.

Judge Wright's opinion in *Guilday v. Department of Justice*, also rejects both the plaintiff's position that trial *de novo* is always available, and the government's position that the court's role is limited to substantial evidence review.[82] While relying on *Hackley*, Judge Wright also found authority in Rule 56(c), Fed.R. Civ.P. for rejecting plaintiff's claim to an evidentiary hearing:

"As a matter of course, the Government—and often the plaintiff—moves for summary judgment based on the administrative record. The court must decide, after reviewing the record, whether there is a genuine issue as to any material fact and whether that movant is entitled to a judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. Based on this review, the Court either remands for further administrative proceedings, allows the case to go to trial—with the administrative record in evidence—, or grants or denies relief on the administrative record." (footnote omitted)[83]

Judge Wright then proceeded to consider by what standard a district court should review the administrative record, and held that it would require that the "absence of discrimination be established by the preponderance of evidence in the administrative record."[84]

■ There is no doubt that in appropriate cases summary judgment may be correct. But we do not think that Rule 56(c) can support the kind of hybrid judicial review envisaged by Judge Wright. Our difficulty lies in applying his proposed standard of review. Consider, hypothetically, a discrimination complaint which turns on credibility. If the agency's hearing examiner makes credibility judgments against the complaining employee, will the district court then defer to those judgments or instead attempt to reach an independent judgment on the basis of a transcript without ever having the benefit of an opportunity to observe the demeanor of the complainant and other witnesses? If the Board of Appeals and Review of the Civil Service Commission, which also reviews on the agency record, has affirmed the hearing examiner's decision, what deference will be given to the Board's decision by the district court in applying the preponderance test? Finally, since in the administrative grievance proceedings the burden presumably is on the employee to establish his grievance,[85] what justification is there, when the matter reaches court, for reviewing the record to see if the government has disproved the grievance by a preponderance of the evidence?

We are well aware that a substantial motivation of those courts which have held that federal employee discrimination claims will be reviewed on the agency record by a substantial evidence standard has been their perception of the deluvian consequences of such lawsuits in the federal judicial system, and of the

---

**82.** 385 F.Supp. at 1099–1102.

**83.** *Id.* at 1099. See the concluding paragraph of this section, p. 484 *infra*.

**84.** *Id.* at 1102.

**85.** In *Hackley v. Johnson, supra*, Judge Gesell appears to have taken the view that a complainant satisfies his or her burden of going forward by introducing any proof suggestive of discrimination.

"Those who feel aggrieved, once having brought forward any proof suggestive of discrimination, are entitled to require those most cognizable of the relevant employment practices to come forward and disprove the accusation by the clear weight of the evidence." 360 F.Supp. at 1253.

We believe this view to be incorrect. The burden is on the federal employee to prove his or her discrimination claim by a preponderance of the evidence.

waste involved in affording both administrative and judicial remedies. Those concerns, while real, are matters properly within the sphere of the legislature. In any event, the federal courts have not been put out of business by Title VII lawsuits from the private sector. Those suits, too, in many cases duplicate grievance-arbitration remedies analogous to the grievance remedies established by federal regulation for government employees. Though the burden imposed on the federal courts by § 717 will be a heavy one, we will, one suspects, remain open for business.

■■ We thus conclude that in the *de novo* proceedings in the district court, the agency record can be reviewed on a motion for summary judgment by the standard generally applicable under Rule 56, Fed.R.Civ.P.; that is the existence of any genuine issue of fact as to employment discrimination. If such a motion is not granted, the agency record is admissible in evidence at trial when appropriate under the applicable Federal Rules of Civil Procedure and of Evidence. And, as in any other civil action, the aggrieved federal employee must prove his or her discrimination claim by a preponderance of the evidence.

## SPERLING'S CASE

■ Although the district court applied an improper legal standard in deciding the government's motion for summary judgment, a remand by this court would not be necessary if by any standard Sperling could not prevail. Thus we must consider whether § 717 is applicable to Sperling's charge that the government discriminated against him as a consequence of his representation of blacks in grievance discrimination proceedings at Fort Monmouth. The government, without referring us to any authority,

but instead relying on the language in § 717(a) that prohibits "discrimination based on race, color, religion, sex, or national origin" in federal employment, argues that the 1972 Act afforded no substantive protection from reprisal or retaliation to Sperling in his capacity as a *representative* of a black employee claiming discrimination. However, almost identical language appears in 5 U.S.C. § 7151 et seq., which seeks to insure equal employment opportunities to federal employees.[86] Acting pursuant to those provisions, the Civil Service Commission has adopted regulations which provide in pertinent part:

> "Complainants, their *representatives*, and witnesses shall be free from restraint, interference, coercion, discrimination, or reprisal at any state in the presentation and processing of a complaint, including the counseling stage under section 713, or anytime thereafter." (emphasis supplied).[87]

This is a construction of § 7151 et seq. by the very agency charged with its administration. The § 717(c) remedy supplements those additional remedies which were made available to federal employees pursuant to 5 U.S.C. § 7151 et seq., and it would be quite illogical to assume a congressional intention that § 717 be read more narrowly. We conclude, therefore, that Sperling's claim of discrimination falls within § 717's ambit.

■ The government also contends that on the administrative record in this case, which is the only evidence on which Sperling relied, the defendants are entitled under Rule 56 to a summary judgment that he was not discriminated against. We have reviewed the entire record, encompassing six volumes of appendix, and conclude that summary judgment would be inappropriate here because genuine issues of fact exist as to

---

**86.** 5 U.S.C. § 7151 provides:

"It is the policy of the United States to insure equal employment opportunities for employees without discrimination because of race, color, religion, sex, or national origin.

The President shall use his existing authority to carry out this policy."

The President implemented this policy with his issuance of Executive Order 11478.

**87.** 5 C.F.R. § 713.261(a).

Sperling's allegations of employment discrimination.

On remand the district court must make an independent determination as to whether the charge of discrimination which was pending at the time of enactment of § 717 has been sustained by a preponderance of the evidence. In making that determination the court will have to consider to what extent evidence relating to prior acts of alleged discrimination are properly considered as evidentiary in support of the pending charge. For example, Sperling traces his ongoing employment difficulties to a highly critical report written by William Biven, an Assistant Deputy Equal Employment Opportunity Officer at Fort Monmouth, with respect to his conduct as the representative of a black complainant in a June, 1967 discrimination hearing. (3 Appendix at 915–40). The report urges that Sperling be disciplined for what Biven characterized as Sperling's "misconduct" as the complainant's representative at the hearing (3 Appendix at 929–36). Whether there is in fact any connection between the Biven report and subsequent decisions on Sperling's promotion is a matter which the district court must consider. Since we are remanding so that it can make an independent factual determination, it is not appropriate for us to express our views on the facts except to hold that summary judgment was improper here.

█ Finally, as to the request for attorneys fees, such an award may be made only if Sperling prevails below. 42 U.S.C. § 2000e–5(k).

The order of the district court granting summary judgment for the defendants will be reversed and the case remanded for further proceedings consistent with this opinion.