Joseph L. ELLIS et al.

v.

NAVAL AIR REWORK FACILITY,
ALAMEDA, CALIFORNIA, et al.

Etta B. SAUNDERS, Individually and on
behalf of others similarly situated

v.

John W. WARNER, in his capacity as Sec-
retary of the Navy, et al.
(two cases).

Jadell BELL, Individually and on behalf
of all others similarly situated

v.

John W. WARNER, in his capacity as Sec-
retary of the Navy, et al.

Gwendolyn DAWSON, Individually and
on behalf of all others simi-
larly situated

v.

NAVAL AIR STATION, ALAMEDA,
CALIFORNIA, et al.

Moses SAUNDERS and Willie Lewis, In-
dividually and on behalf of all others
similarly situated

v.

NAVAL AIR REWORK FACILITY, ALA-
MEDA, CALIFORNIA, et al.

Manuel F. ALVARADO and Jose D. Ter-
razas, Individually and on behalf of all
others similarly situated

v.

NAVAL AIR REWORK FACILITY, ALA-
MEDA, CALIFORNIA, et al.

Nos. C-73-1794 WHO, C-73-2241 WHO, C-
74-0028 WHO, C-74-0489 WHO, C-74-
0520 WHO, C-74-0764 WHO and C-74-
1286 WHO.

United States District Court,
N. D. California.

June 20, 1975.

On Motion for Reconsideration
Nov. 3, 1975.

See also, D.C., 404 F.Supp. 391.

378

Clifford C. Sweet, John H. Erickson, Thomas Schneider, Miriam Morse, Malcolm B. Hunter, Robert Ramsey, Jr., Roger A. Clay, Jr., Oakland, Cal., John George, Berkeley, Cal., for Joseph L. Ellis.

Lowell Johnston, William E. Hickman, San Francisco, Cal., Jack Greenberg, James M. Nabrit, III, Charles Stephen Ralston, Eric Schnapper, New York City, Howard Moore, Jr., Berkeley, Cal., for Etta B. Saunders.

William E. Hickman, William Bennett Turner, Lowell Johnston, San Francisco, Cal., Howard Moore, Jr., Berkeley, Cal., for Jadell Bell.

Clifford C. Sweet, John H. Erickson, Alice M. Beasley, Roger A. Clay, Jr., Thomas Schneider, Miriam Steinbock, Legal Aid Society of Alameda County, Oakland, Cal., for Gwendolyn Dawson, Moses Saunders and Manuel F. Alvarado.

James L. Browning, Jr., U.S. Atty., John F. Cooney, Jr., Asst. U.S. Atty., Civ. Div., San Francisco, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

ORRICK, District Judge.

Plaintiffs in these seven related actions are Black and Mexican-American male and Black female civilian workers at the Naval Air Station in Alameda County, California. They allege that they have been discriminated against in employment on the basis of their race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 (42 U.S.C. § 2000e–16), 42 U.S. C. § 1981, the Due Process Clause of the Fifth Amendment, and Executive Order No. 11478, 3 C.F.R. § 207 (1974). These cases involve eleven individual plaintiffs,[1] raising approximately thirty

---

1. Plaintiffs in each of the seven cases have also alleged that they are representative of a class of similarly situated plaintiffs. However, no determination as to the certification of a class action has as yet been made in any of the cases.

separate claims of discrimination in firing and promotional decisions and job training assignments at the naval base.

The defendants have moved to dismiss all jurisdictional grounds other than Title VII of the Civil Rights Act of 1964 (hereinafter Title VII) (42 U.S.C. § 2000e–16). They have also moved for summary judgment based on the available administrative records in each of the actions. Plaintiffs, in turn, have filed cross motions for summary judgment in several of the cases and have asked for additional hearings in federal court in other instances.

Thus, the two major issues to be determined by the Court at this time are, *first,* whether there are jurisdictional grounds for complaints against the federal government alleging employment discrimination other than Title VII and, *second,* what is the scope of review to be given to the administrative proceedings.

For the reasons hereinafter set forth, I dismiss all jurisdictional grounds in all seven of the cases other than Title VII. I deny all of the defendants' motions for summary judgment and all of the plaintiffs' cross motions. I grant the eleven plaintiffs hearings *de novo* in the district court on the discrimination claims that they raised, or attempted to raise, at the administrative level.[2]

## I. JURISDICTION

■ It is clear that the passage of Title VII, which provides a specific statutory remedy for discrimination in employment, did not preempt the more general statutory grounds for bringing discrimination complaints. *Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L. Ed.2d 290 (1974). It is also clear that in actions brought by employees against private employers, Title VII and 42 U. S.C. § 1981 are independent and supplemental grounds for jurisdiction. *Alex-*

*ander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). However, the defendants in these seven cases are federal employers. Moreover, because the plaintiffs are suing the federal government, they must overcome the bar of sovereign immunity. *Larson v. Domestic & Foreign Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). While Title VII creates an explicit waiver of sovereign immunity and permits federal employees to sue in federal court (42 U.S.C. § 2000e–16(c)), 42 U.S.C. § 1981 and the Fifth Amendment do not contain such waivers. Plaintiffs must, therefore, rely on the *ultra vires* exception to sovereign immunity to maintain jurisdiction under 42 U.S.C. § 1981 and the Fifth Amendment. Several courts have recognized that federal officers who discriminate in employment practices are acting outside the scope of their statutory authority and are subject to the *ultra vires* exception (*Bowers v. Campbell,* 505 F.2d 1155 (9th Cir. 1974); *Petterway v. Veterans Administration Hospital,* 495 F.2d 1223 (5th Cir. 1974). The type of relief available, however, in cases brought under the *ultra vires* exception has been limited to *mandamus* relief of reinstatements and/or promotion. *Beale v. Blount,* 461 F.2d 1133 (5th Cir. 1972); *Penn v. Schlesinger,* 490 F.2d 700 (5th Cir. 1973).

■ *Mandamus* is an extraordinary judicial remedy that will only issue when there is (1) a clear right in the plaintiff to the relief sought, (2) a clear duty on the part of the defendant to do the act in question, and (3) no other adequate remedy available. *Carter v. Seaman,* 411 F.2d 767, 773 (5th Cir. 1969).

■ Plaintiffs in these actions do have an adequate remedy in Title VII, and *mandamus* is, therefore, inappropriate. Under Title VII plaintiffs may

2. The claims of plaintiffs Etta Saunders I (C–73–0241) and Manuel Alvarado (C–74–0764) were never processed at the agency level and there is, therefore, no administra-tive record available. The procedural posture of these claims will be discussed separately *infra.*

seek reinstatement, promotion, back pay, and injunctive relief for redress of the discrimination complaints they have raised or attempted to raise administratively. If plaintiffs are precluded from bringing certain claims under Title VII because they have failed to exhaust their available administrative remedies, they would also be precluded from raising these claims pursuant to 42 U.S.C. § 1981 or the Fifth Amendment. *Bowers v. Campbell, supra.* Plaintiffs cannot circumvent the exhaustion requirements by alleging additional jurisdictional grounds. Accordingly, all jurisdictional grounds other than Title VII are dismissed. *McLaughlin v. Callaway,* 382 F. Supp. 885 (S.D.Ala.1974).

## II. SCOPE OF REVIEW

Ten of the eleven plaintiffs' claims were investigated by the employees' own agency at the naval base (5 C.F.R. §§ 713.213–713.218). Six of the plaintiffs also had more formal "quasi-judicial" hearings before the Civil Service Commission ("CSC") (5 C.F.R. § 713.231). *Bowers v. Campbell, supra.* The defendants contend that the records produced by these administrative bodies adequately develop the discrimination claims, that any deficits in the records are due to plaintiffs' own failure to make timely requests for additional information or witnesses, and that the Court is, therefore, limited to reviewing the administrative records and determining whether "an absence of discrimination is affirmatively established by the clear weight of the evidence". *Hackley v. Johnson,* 360 F.Supp. 1247, 1252 (D.D.C.1973); *Chandler v. Johnson,* 515 F.2d 251 (9th Cir. 1975); *Salone v. U. S.,* 511 F.2d 902 (10th Cir. 1975). Plaintiffs, on the oth-

er hand, contend the available administrative records have serious deficiencies that can only be remedied through judicial discovery. They contend that at the least they are entitled to supplement the administrative record (*Chandler v. Johnson, supra*), and that the more appropriate relief would be a hearing *de novo* in district court. *Sperling v. United States,* 515 F.2d 465 (3d Cir. 1975).

### A. *The District Court Decisions*

Federal employees were expressly excluded from the coverage of Title VII as it was initially enacted. 42 U.S.C. § 2000e(a) and (c). In 1972, Title VII was amended by the Equal Opportunity Employment Act of 1972 (42 U.S.C. § 2000e–16), and federal employees were brought within the ambit of the Act. Since that time, the scope of judicial review in federal employee discrimination cases has been a much litigated issue. Several courts have reasoned that since private employees who bring discrimination suits pursuant to Title VII are entitled to hearings *de novo* in federal court (*Alexander v. Gardner-Denver Co., supra; McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)), federal employees who bring discrimination actions under the same statute are also entitled to *de novo* hearings (e. g. *Reynolds v. Wise,* 375 F.Supp. 145 (N.D.Tex.1974); *Henderson v. Defense Contract Admin. Service Region,* 370 F.Supp. 180 (S.D.N.Y. 1973).

Other district courts have taken a contrary position holding that federal employees, suing under Title VII, are not entitled as a matter of right to hearings *de novo* in federal courts.[3] e. g. *Hackley v. Johnson, supra; Carreathers v. Alex-*

---

3. The Court is aware that within this district the four judges who have considered the issue have determined that federal employees are not entitled as a matter of right to hearings *de novo* in federal court. *Jackson v. Klassen, et al.,* C–73–1068 (N.D.Cal. Nov. 19, 1974) (Williams, J); *Brown v. Froelke, et al.,* C–73–0251 (N.D.Cal. Oct. 25, 1974) (Wollenberg, J); *Thompson v. De-*

*partment of Justice,* 372 F.Supp. 762 (N.D. Cal.1974) (Wollenberg, J); *Wormley v. Department of the Navy, et al.,* 8 FEP Cases 1008 (N.D.Cal.1974) (Schnacke, J); *Bernardi v. Butz,* 8 FEP Cases 479 (N.D.Cal. 1974) (Conti, J). All of these cases were decided before the Third Circuit's persuasive decision in *Sperling v. U. S., supra* (see discussion of *Sperling infra* at pages 383–384).

*ander,* No. C–5082 (D.Colo. Dec. 11, 1974). These courts, after declaring the legislative history of the 1972 Amendments to Title VII to be murky, compare the legislative scheme for private and public employee discrimination suits. They reason that private employees who are entitled to hearings *de novo* in federal court may only process their grievances administratively through the informal conciliatory and investigative efforts of the Equal Employment Opportunity Commission ("EEOC"). Federal employees, on the other hand, may have their claims investigated by the employing agency and then heard by the CSC. Because the federal employees have access to fuller administrative proceedings, the courts reason that these federal employees are not entitled to hearings *de novo* in federal court.

### B. *The Circuit Court Decisions*

In the past several months, the first circuit court opinions dealing with the proper scope of review have been rendered. As with the district courts, the circuits are divided on the issue. The Tenth Circuit in *Salone v. U. S., supra,* and the Ninth Circuit in *Chandler v. Johnson, supra,* relied heavily on Judge Gesell's decision in *Hackley v. Johnson, supra,* and concluded that the district court's role is limited to making an independent review of the record, determining whether the record must be supplemented for a variety of reasons, and supplementing the administrative records. The Third Circuit in *Sperling v. U. S., supra,* having made a thorough and independent review of the legislative history of the 1972 amendments to Title VII, has reached a different conclusion and has determined that federal employees, like private employees, are entitled as a matter of right to hearings *de novo* in the district court. According to

the Third Circuit, the agency record can be reviewed in the district court on a motion for summary judgment. If the record reveals that there are no material issues of fact concerning the absence of discrimination, then the case may be dealt with under the standards that are generally applicable to summary judgment motions (Fed.R.Civ.P. 56). If, however, the administrative record leaves genuine issues of fact in dispute and the motion is denied, the plaintiff is entitled to a hearing *de novo* and the administrative record is then admissible at trial, like other recorded testimony, under the applicable rules of evidence. I find the analysis and reasoning of the *Sperling* opinion to be most persuasive, and I will follow the standards of review set out in that decision.[4]

### C. *Sperling v. United States*

Particularly compelling is the Third Circuit's demonstration that the availability of a CSC hearing in some instances does not logically compel the conclusion that federal employees are to be accorded lesser hearing rights than their private employee counterparts when the statutory scheme of 42 U.S.C. § 2000e–16(c) is looked at as a whole. In at least two situations, the federal employees will come to federal court with no more elaborate an administrative record than would be compiled by an EEOC investigation of a private employment discrimination claim. Federal employees who have filed discrimination charges with the employing agency, but who have not received a final agency determination within 180 days will have filed in the district court without the benefit of any administrative record. 42 U.S.C. § 2000e–16(c). Where the employing agency has processed and rejected a claim of discrimination, the employee has the option of filing suit in

---

4. Although the Ninth Circuit in *Chandler v. Johnson, supra,* reached a different conclusion on the scope of review for federal employee discrimination suits, it appears that the court did not have the benefit of the

Third Circuit's exhaustive discussion of the issue. *Chandler* was filed only a week after *Sperling v. United States, supra,* and makes no reference to the Third Circuit opinion.

the district court *or* of appealing to the CSC. 42 U.S.C. § 2000e–16(c). If the employee elects to file directly in district court, the agency record that will accompany him or her will be no more complete than the record compiled by an EEOC investigation of a private employee's claim. In at least these two situations there appears to be no rational reason for differentiating the type of judicial review available to private and public employees.

It is true that some federal employees will exercise the third option of administrative processing and will process their claims through an appeal to the CSC. These employees will come to court with a more formal administrative investigation of their claims. However, there is nothing in 42 U.S.C. § 2000e–16 to indicate that a distinction should be made in the scope of judicial review for federal employee claims depending upon which of the three administrative avenues their complaints have followed before filing in the district court.

To support the theory that a hearing *de novo* is not applicable to federal employee claims that have been or could have been processed through the CSC hearings, several courts have relied on the wording of 42 U.S.C. § 2000e–16(d) which provides the rights of private employees under Title VII shall only apply to federal employees "as applicable". e. g. *Hackley v. Johnson, supra; Salone v. United States, supra.* I think the Third Circuit's analysis of earlier versions of the legislation that included the catch-all words "as applicable" but vested investigative and administrative enforcement responsibility for federal employee claims with the EEOC, not with the CSC, effectively dispels the notion that Congress included the phrase "as applicable" because it felt the more elaborate, quasi-judicial CSC hearings made the full panoply of rights accorded private employees unnecessary in federal employment discrimination claims. *Sperling v. U. S., supra,* at 475.

Also persuasive on the issue of scope of review is the Third Circuit's demonstration that Judge Gesell's emphasis in *Hackley v. Johnson, supra,* on the comments of Senators Williams and Cranston was misplaced. Although the comments of Senator Williams, one of the initial sponsors of the bill, indicates that the judicial role was to be limited to a review of the administrative record, the Third Circuit's juxtaposition of the comments of Senator Williams with the Senate Committee Report indicates that it was the consensus of the senate as a whole to provide for a fuller judicial role. *Sperling v. U. S., supra,* at 479.

With respect to the comments of Senator Cranston, the Third Circuit demonstrates that in *Hackley v. Johnson, supra,* Judge Gesell relied on an erroneous reporting of the Senator's comments in the *Congressional Record.* Rather than stating that federal employees would not be entitled to a hearing *de novo* in federal court as initially reported, the Senator actually stated that federal district court review would be based on the agency and/or CSC record and *would be* a trial *de novo. Sperling v. U. S., supra,* at 480 n. 72.

In addition to the reasons enumerated in *Sperling,* I find that the different standard of proof and the different format for presentation of evidence utilized at the hearings before the CSC and the district court precludes reliance on the administrative record in most instances. Although plaintiffs ostensibly have the burden of proving discrimination by a preponderance of the evidence in both the agency and court proceedings, the internal CSC *Discrimination Complaints Examiners Handbook* (April, 1973, at page 62) permits the CSC examiner to find that disparate treatment is due to racial discrimination only if "a reasonable and unprejudiced mind could not infer from the facts so assembled that the agency was free from discrimination". This inference in favor of the government imposes a heavier burden of proof

on plaintiffs at the administrative level than would apply in the federal courts and permits the government to defeat the discrimination claim if a single inference could be made in favor of nondiscrimination.

The format for presentation of evidence at the administrative level also makes federal court review based solely on the record difficult. Evidence is presented at the CSC hearing in the traditional two-step manner with a plaintiff putting on his or her case and the government responding. However, the federal courts are to follow a three-step process in trying employment discrimination cases. *McDonnell Douglas v. Green, supra.* In federal court, the plaintiff is first given the opportunity to present a *prima facie* case; if plaintiff meets this burden, defendant then has the opportunity to rebut the showing of discrimination. Finally, if the defendant has effectively rebutted the discrimination claim, the plaintiff has the opportunity and the right to show that the rebuttal is actually a pretext for discrimination.

Because the CSC hearings are not conducted according to the three-step process required of the federal courts, it is often difficult to mold the evidence that was presented into compartments of *prima facie* showing, rebuttal, and pretext. Very often the evidence on the third or pretext phase of the proceedings is completely lacking. While at first blush it would seem that a mere supplementation of the record would remedy the deficiencies of the administrative proceedings, the combined effect of the two-step format for the presentation of evidence and the inference in favor of the government often colors the entire presentation of the evidence and

makes it exceedingly difficult to make an independent evaluation of the evidence based on the federal standards for determining discrimination complaints.

■ For all of the reasons set forth above, I hold that, if the administrative record does not provide a sound basis for dealing with the merits of an employment discrimination claim on a motion for summary judgment, then a federal employee bringing a discrimination suit pursuant to Title VII is entitled to a hearing *de novo* in federal court.

## III. MOTIONS FOR SUMMARY JUDGMENT

■ Ten of the eleven plaintiffs in these consolidated actions had their discrimination complaints processed through their employing agency.[5] Six of these plaintiffs went on to have CSC hearings as well.[6] Having reviewed the records of the agency investigation and the CSC hearings where available, I find that the records in each of these cases leaves issues of material fact in dispute. In many of the cases it is unclear what procedures were followed in making the firing, promotional, or job training decisions. In most instances even where the chronology of events is clear, the underlying motivation for the actions is difficult to ascertain. In addition, I find the records to be noticeably lacking in statistical evidence on hiring and promotional opportunities at the base analyzed on the basis of race and sex. Based on the records before me, I cannot make an adequate independent determination of the discrimination claims raised by the plaintiffs. Accordingly, I deny the motions for summary judgment for all nine of the plaintiffs whose claims were processed at the administrative level, and I order hearings *de novo* in federal court

5. Carl Bailey, C–73–1794; Jadell Bell, C–74–0225; Gwendolyn Dawson, C–74–0489; Elly Diggs, C–73–1794; Joseph Ellis, C–73–1794; Willie Lewis, C–74–0520; Etta Saunders II, C–74–1286; Moses Saunders, C–74–0520; Jose Terrazas, C–74–0764; Joshua Williams, C–73–1794. The claims of Etta Saunders I, C–73–0241, and Manuel Alvara-

do, C–74–0764, were never processed at even the agency level.

6. Gwendolyn Dawson, C–74–0764; Elly Diggs, C–73–1794; Joseph Ellis, C–73–1794; Moses Saunders, C–74–0520 (harassment claim only); Jose Terrazas, C–74–0764; Joshua Williams, C–73–1794.

on all of the claims these plaintiffs raised or attempted to raise at the administrative level.[7]

## A. *Etta Saunders I*

The claims of plaintiffs Etta Saunders I (C–73–0241) and Manuel Alvarado (C–74–0764) are before the Court in a different procedural posture since their employing agencies refused to process their discrimination grievances. With respect to both of these plaintiffs, the defendants claim the only issue properly exhausted at the administrative level, and, therefore, the only issue properly before the Court, is whether or not their agency's refusal to accept jurisdiction was correct.

Plaintiff Etta Saunders attempted to file a discrimination complaint with her employing agency on the grounds that she was discriminated against on account of her race and sex when she was fired. Because Ms. Saunders had already filed a similar action with a different branch of the agency alleging that the reduction in force ("RIF") regulations were not followed when she was fired, her employing agency refused to accept her discrimination complaint. The agency determined that its own regulations precluded it from accepting the complaint since the underlying RIF claim had already been adversely determined by another part of the agency. 5 C.F.R. § 713.216. Were the Court to follow defendant's line of reasoning, Ms. Saunders would effectively be precluded from ever bringing her discrimination claims into federal court since agency exhaustion is precluded by the agency's own regulations. This result runs contra to the congressional goal of increased federal court supervision of federal employee discrimination claims under Title VII.

I find that plaintiff Etta Saunders has made a good-faith attempt to exhaust her administrative remedies, and she may, therefore, proceed on the mer-

its of her claim in federal court. *Jefferson v. Peerless,* 456 F.2d 1359 (9th Cir. 1972). Accordingly, defendant's motion for summary judgment in the case of Etta Saunders II (C–73–2241) is denied.

## B. *Manuel Alvarado*

Plaintiff Manuel Alvarado's discrimination complaint was also refused by his employing agency for administrative investigation since the agency determined the complaint was filed after the thirty-day statute of limitation established by the agency regulations. 5 C.F.R. § 713.-214 provides that the discrimination complaint be accepted if:

> "The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him to believe he had been discriminated against within 30 calendar days of the date of that matter * * *."

Alvarado's underlying claim of discrimination rests on his failure to be promoted to the position of equal employment opportunity co-ordinator specialist at the naval base. Although his job position was filled by another individual many months before Alvarado filed his discrimination complaint, in his affidavit Alvarado swears he did not learn of any impropriety in the decision-making process until he chanced to have a conversation with Captain Wolfe, the commanding officer at the naval base. Alvarado filed his discrimination complaint within a few days of this conversation.

I find that Alvarado has filed his discrimination complaint within the literal terms of 5 C.F.R. § 713.214. The conversation with Captain Wolfe was the "matter" causing him to believe he had been discriminated against. His complaint was filed well within 30 days of that conversation. I find that plaintiff Alvarado's claim was improperly rejected by his employing agency. Since Al-

---

7. The exact scope of the discrimination claims of each plaintiff will be determined at a later time during the pretrial preparation.

varado has made a good-faith effort to exhaust his administrative remedies, I find that he may now proceed on the merits of his discrimination complaint in district court. Accordingly, the defendant's motion for summary judgment with respect to Manuel Alvarado is also denied.

IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss all jurisdictional bases other than 42 U.S.C. § 2000e–16 is granted.

2. Defendants' motions for summary judgment in each of the seven cases are denied.

3. Plaintiffs' cross motions for summary judgment are denied.

4. Each of the eleven plaintiffs in each of the seven cases is entitled to a hearing *de novo* in this Court.

5. The seven cases are consolidated for purposes of discovery.

6. Counsel will comply with the schedule for pretrial preparation set forth in the pretrial order number 1 filed with the Court on June 3, 1975.

## ON MOTION FOR RECONSIDERATION

In this action, brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), federal employees challenge alleged employment discrimination against minority civilian workers at the Naval Air Rework Facility (NARF) and the Naval Air Station (NAS) in Alameda, California. Defend-

ants have moved the Court to reconsider its previous rulings denying the government's motions for summary judgment based on the records of administrative hearings before the Civil Service Commission (CSC) and permitting all nine of the named plaintiffs to proceed with their claims by way of hearings *de novo* in federal court.[1] The defendants claim that in denying the summary judgment motions with respect to each of the plaintiffs, the Court applied an improper standard of review. The defendants further claim that with respect to certain individual plaintiffs, the Court improperly failed to require exhaustion of administrative remedies or a timely filing of the civil suit once the administrative remedies had been exhausted.

In this motion for reconsideration, as in the defendants' initial motions for summary judgment, the central issue before the Court is the much-litigated and much-disputed scope of judicial review to be afforded federal employees bringing employment discrimination claims under Title VII.[2]

## SCOPE OF REVIEW

In considering the defendants' initial motion for summary judgment, I rejected their contention that the judicial role in federal employment discrimination cases is limited to a review of the administrative record compiled by the CSC,[3] and I held that if the discrimination claims could not be determined by way of summary judgment based on the

---

1. Memorandum Opinion and Order, *Ellis v. Naval Air Rework Facility*, 404 F.Supp. 377 (N.D.Cal., June 20, 1975). This Court has also previously certified this suit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. *Ellis v. Naval Air Rework Facility, supra*, 404 F.Supp. 391, 1975.

2. See *Hackley v. Roudebush*, 520 F.2d 108 (D.C.Cir. 1975); *Sperling v. United States*, 515 F.2d 465 (3d Cir. 1975); *Caro v. Schultz*, 521 F.2d 1084 (7th Cir. 1975); cf. *Chandler v. Johnson*, 515 F.2d 251 (9th Cir. 1975); *Salone v. U. S.*, 511 F.2d 902 (10th Cir. 1975). For a survey of the varying judicial views taken on the issue see, also,

Rotstein, Robert H., "Federal Employment Discrimination: Scope of Inquiry and the Class Action Under Title VII". 22 UCLA Law Review 6: 1288 (Aug. 1975).

3. The government did concede that in certain instances the district court in its discretion could supplement the records of the administrative hearings. *Hackley v. Johnson*, 360 F.Supp. 1247 (D.D.C.1973). However, the government contended that in the cases presently at bar no supplementation would be appropriate either (1) because the records were adequate, or (2) plaintiffs had failed to preserve their objections to the current state of the records.

administrative record, federal employees were then entitled as a matter of right to hearings de novo in federal court. In reaching this conclusion, I relied heavily on the Third Circuit's extensive and well-reasoned opinion in *Sperling v. United States,* 515 F.2d 465 (3d Cir. 1975), which rectified the prior judicial misconstruction of the legislative intent behind the 1972 amendments to Title VII. In making its own detailed analysis of the legislative history, the *Sperling* court concluded that Congress had intended federal employees to have hearings de novo as a matter of right.

The Court of Appeals for the District of Columbia provides additional strong support for this view. In *Hackley v. Roudebush,* 520 F.2d 108 (D.C. Cir., 1975) (which was decided after the instant motion was briefed and argued), the court, reversing *Hackley v. Johnson,* 360 F.Supp. 1247 (D.D.C.1973), which had provided the seminal interpretation of the legislation,[4] held that in Title VII cases federal employees are entitled as a matter of right to a trial de novo in federal court.

Defendants' main contention is that the *Sperling* court placed undue emphasis on the Senate Committee Report[5] as the authoritative expression of Congressional intent.[6] To lay to rest this and the other contentions of the defendants concerning the intent of Congress in enacting the 1972 amendments to Title VII as reflected in the legislative history, I shall comment on both the Third Circuit

opinion in *Sperling* and the Court of Appeals opinion in *Hackley v. Roudebush* as well as some pertinent parts of the legislative history itself. In *Sperling* the court compared the Senate Committee Report with the later comments of Senator Williams, one of the bill's original sponsors, and concluded that Senator Williams' slight alterations in the Report's language indicated that the consensus of the Committee was to provide hearings de novo, although Senator Williams wanted more limited judicial review. *Sperling v. United States, supra,* at 479, 480. The defendants claim that the Court's reliance on the Report in *Sperling* is faulty since the comments of Senator Williams and those of the Senate Committee were addressed to different versions of the legislation and are, therefore, not comparable.

While it is true that the Committee's comments were addressed to an early version of the legislation which vested the Equal Employment Opportunity Commission (EEOC) with cease and desist enforcement powers, whereas Senator Williams was speaking to the final amended version of the legislation which substituted combined Commission and court enforcement for the EEOC involvement,[7] this does not mean that Senator Williams' comments must be deferred to as authoritatively limiting the judicial role to a review of the administrative records. First, after Senator Williams had made his comments on the amended version of the legislation, Senator Cranston, who had been instrumental

---

4. As the Court of Appeals so clearly explained, the district court's faulty analysis of the legislative history resulted in judicial misconstruction by many courts of the legislative intent underlying the 1972 amendments to Title VII. See *Thompson v. United States Department of Justice, Bureau of Narcotics and Dangerous Drugs,* 372 F. Supp. 762 (N.D.Cal.1974); *Handy v. Gayler,* 364 F.Supp. 676 (D.Md.1973); and other progeny of *Hackley v. Johnson, supra.*

5. S.Rep.No.92–415, 92d Cong., 1st Sess. (1971).

6. Since the circuit court decision in *Hackley v. Roudebush, supra,* was rendered after the briefing and argument on the motion presently before this Court, the defendants have not addressed themselves to the District of Columbia Circuit's analysis of the legislation.

7. The Senate adopted the so-called Dominick Amendments to the original bill after several weeks of debate. The Dominick Amendments substituted combined CSC and court enforcement for EEOC cease-and-desist powers. 118 Cong.Rec. 4907 (1972).

in getting the amended bill to the floor of the Senate, had portions of the very Senate Committee Report the defendants now disparage read into the record as explicative of his views of the legislative intent behind the new bill. The portions read by Senator Cranston included support for *de novo* hearings in the district court.[8] Second, even assuming for the moment that one could establish by chronology whether the comments of Senator Williams or the Committee should be afforded more weight, in my view the distinctions in nuances between the comments are far too subtle to support the rise or fall of hearings *de novo*. Senator Williams' analysis and the Committee's analysis vary in only a few words.

As pointed out by Judge Skelly Wright in *Hackley v. Roudebush, supra,* from the varied comments of Senator Williams, one cannot determine exactly what the Senator's position was on the scope of review. Although Senator Williams stated that federal employees would have the "full right of review available in the courts", indicating that they would not have hearings *de novo,* in the same breath the Senator also stated that federal employees should have the same rights as employees in the private sector. These statements appear to be contradictory since private employees had already been accorded the right to a trial *de novo* in the district court. *Hackley v. Roudebush, supra,* at 1875.

While the legislative comments specifically addressed to the scope of review may be murky at best, the legislative purpose behind the amendments is clear throughout. Congress, in enacting the 1972 Amendments to Title VII, meant to give the federal employees the same rights as private individuals bringing employment discrimination claims. The congressional aim to rectify the inequality and give federal employees the same rights as private sector employees was made abundantly clear by the House Committee Report:

"Accordingly there can exist no justification for anything but a vigorous effort to accord Federal employees the same rights and impartial treatment which the law seeks to afford employees in the private sector." H.R. Rep. No. 92–238, 92d Cong., 1st Sess. 56–57 (1972), U.S.Code Cong. & Admin.News 1972, p. 2158.

by the Senate Committee Report:[9]

"The provisions adopted by the committee will enable the Commission to

---

8. 118 Cong.Rec. 4938 (1972).

9. Although the Senate and House Committee Reports were discussing the legislation before the Dominick Amendments were added vesting enforcement supervision in the CSC and the courts rather than the EEOC, there is no indication that the clearly enunciated congressional intent to allow the same rights to federal employees as to private employees was altered at any time despite the fact that the specific means to implement this intent were changed. Surely, Congress would have addressed so important an issue if they had, meant to reduce the rights of federal employees.

The court in *Hackley v. Roudebush, supra,* also found the total absence of legislative comment distinguishing the rights of private and public sector employees to be significant. In discussing the appropriate scope of review, the court stated :

" * * * [I]t would be difficult indeed to assert that although Congress wanted to limit federal employee 'civil actions' to review of the administrative record, it did not say anything about the 'review' procedures, especially the standard of review, even when the Dominick amendment purged all references to review from the Committee Bill and Congress thereby accepted Senator Dominick's goal of equal court treatment for all employees. Given the significance that Congress attached to the standard of review, and the detail with which Congress specified procedures governing such 'review' problems as inadequate administrative records and failure to present evidence before the agency, we believe Congress would have addressed these issues if a 'review' proceeding rather than a trial *de novo* in the District Court was intended." at 146.

grant full relief to aggrieved employees, or applicants, including back pay and immediate advancement as appropriate. Aggrieved employees or applicants will also have the full rights available in the courts as are granted to individuals in the private sector under Title VII." S.Rep. No. 92–415, 92d Cong., 1st Sess. 15 (1971).

by Senator Williams:

"There is no reason why a Federal employee should not have the same private right of action enjoyed by individuals in the private sector, and I believe that the [Senate] committee has acted wisely in this regard." 118 Cong.Rec. 4922 (1972).

and by Senator Cranston:

"Aggrieved employees or applicants will also have the full rights available in the courts as are granted to individuals in the private sector under title VII." 118 Cong.Rec. 4938 (1972).

The Supreme Court has made it quite clear that the rights of private employees bringing Title VII actions include full and independent judicial court determinations of their claims even after there has been some administrative action. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed. 2d 147 (1974); *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In light of the teachings of the Supreme Court and the clear statements of legislative purpose, I am of the opinion that federal employees are entitled as a matter of right to hearings *de novo* in federal court.

■ However, I need not reach this issue in the cases presently before me. Even assuming *arguendo* that federal employees are not entitled to a full and independent district court determination as a matter of right, the sorry state of the administrative records in the instant cases would still make summary judgment inappropriate and the taking of additional evidence a necessity. Even *Hackley v. Johnson, supra,* suggests that there might be situations in which the district court judge would find it necessary to supplement the administrative record. Relying on *Hackley v. Johnson,* the Ninth Circuit in *Chandler v. Johnson,* 515 F.2d 251 (9th Cir. 1975), also recognized that there would be instances when supplementation of the record and even hearings *de novo* would be appropriate. Leaving the determination of the proper procedure to the district court, the *Chandler* court stated:

"With this objective in mind, the district judge faced with a demand for a trial de novo is entitled to determine, at a pretrial conference or otherwise, why the plaintiff believes that a trial de novo is necessary. Without, at this time, attempting to canvass all the possibilities in this rapidly expanding branch of the law, a plaintiff might show that the administrative record is inadequate, or that the hearing officer cut short the proceedings in a manner that prevented a fair presentation of the plaintiff's case; or that without judicial discovery, a case could not be made. Other possibilities will no doubt be advanced." 515 F.2d at 255.

In the cases presently at bar, the decision to hold a hearing *de novo* or a hearing based on a supplemented administrative record may be little more than a matter of semantics. As a practical matter, a hearing with a substantially supplemented record may be tantamount to a hearing *de novo.* No matter what title the proceeding is given, the administrative record may be used as evidence and additional testimony will be taken.

I have reviewed the administrative records in the cases at bar. Although voluminous, I find that the records are

grossly inadequate and that substantial supplementation is necessary. Plaintiffs were represented at their hearings by fellow blue-collar workers, untrained in legal skills. When counsel for the government objected to the form of questions, plaintiffs' representatives, being unable to properly rephrase their question or unable to understand the objection, merely passed on to a new area of questioning. Crucial issues were thereby unanswered and unexplored. In addition, the records are noticeably lacking in statistical evidence relating to past policies and practices at the base. Liberal judicial discovery, that is unavailable at the administrative level, is needed to rectify these defects. Based on my review of the records before me, I find that even within the guidelines set out by the Ninth Circuit in *Chandler v. Johnson, supra,* plaintiffs in these actions are entitled to hearings *de novo* in the district court.

### Exhaustion of Administrative Remedies

Defendants also ask the Court to reconsider the former ruling permitting plaintiffs Etta Saunders I and Manuel Alvarado to proceed with their claims in federal court despite the fact that their claims were never fully processed at the administrative level. Defendants contend that, lacking administrative exhaustion, their claims must now either be dismissed or remanded for agency consideration.

Defendants have raised no new arguments with respect to this issue and, once again, I find their reasoning and authorities unpersuasive. The exhaustion problems of plaintiffs Etta Saunders I and Manuel Alvarado do not present the typical situation of a litigant who deliberately circumvents the available administrative channels (*League of United Latin American Citizens v. Hampton,* 163 U.S.App.D.C. 283, 501 F. 2d 843 (1974)), or who unwittingly fails

to comply with administrative filing procedures. *Penn v. Schlesinger,* 490 F.2d 700 (5th Cir. 1974) (*en banc*). Both Etta Saunders I and Manuel Alvarado tried to process their grievances through the appropriate administrative levels, but their claims were unjustly rejected by their employing agencies. Confronted by an agency refusal to even consider their complaints, these plaintiffs had no alternative but to file in federal court.

### Filing Period

Defendants also assert that plaintiff Ellis' claims must be dismissed for failure to file his civil action in a timely manner. Title VII gives a plaintiff thirty days to file in district court after notice of final agency or final appeal board action. 42 U.S.C. § 2000e–16(c). Ellis received notice of final action by the CSC Board of Appeals on September 7, 1973. He filed his district court action on October 9, 1973, some thirty-two calendar days after receiving notice of the agency decision. In 1973, October 7 fell on a Sunday and October 8 was an official court holiday. The clerk's office was closed on both of these days. As a matter of local custom in this district, if a designated filing date falls on a weekend or a holiday, a party is permitted to file on the first day the clerk's office is once again open for official business. Such a filing is deemed timely.

Plaintiff Ellis filed his civil suit the first day after October 7 that the clerk's office was open. To require Ellis to have filed prior to October 7 to accommodate the schedule of the clerk's office would in effect cut his statutory right to file a civil action thirty days after administrative action to only twenty-nine days. I find that plaintiff Ellis filed his Title VII action in a timely manner and, accordingly, that this Court has jurisdiction to consider his claims.

For the foregoing reasons, the motion for reconsideration is denied.