Joseph L. ELLIS, Eley Diggs, and Joshua Williams, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

NAVAL AIR REWORK FACILITY, Alameda, California; J. M. Wolff, in his capacity as Commanding Officer of the Naval Air Rework Facility; Naval Air Station, Alameda, California; W. H. Sells, in his capacity as Commanding Officer of the Naval Air Station; Department of the Navy; John W. Warner, in his capacity as Secretary of the Navy; James R. Schlesinger, in his capacity as Secretary of Defense; United States Civil Service Commission; Robert E. Hampton, Jayne B. Spain, and L. J. Andolsek, in their capacities as Commissioners of the United States Civil Service Commission; and the United States of America, Defendants.

Nos. C–73–1794 WHO, C–74–520 WHO.

United States District Court,
N. D. California.

Feb. 7, 1980.

Joseph L. Ellis, Robert S. Dudley, and Preston L. Stitt, in pro. per., for plaintiffs.

G. William Hunter, U. S. Atty., William T. McGivern, Jr., Chief of Civ. Div., Asst. U. S. Atty., San Francisco, Cal., David J. Anderson, Thomas R. Kline, Dept. of Justice, Washington, D. C., for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

After six years of hard-fought litigation, negotiations which continued until the eve of trial resulted in a Consent Decree (herein "the Decree") settling a Title VII class action brought by a plaintiff class of 2,500 consisting of all past, present, and future black, Hispanic, and Filipino civilian employees and applicants for civilian employment at the Naval Air Rework Facility and the Naval Air Station, both situated in Alameda, California. Named as defendants in the action are the United States of America, the Department of the Navy, the Department of Defense, the United States Civil Service Commission, the Naval Air Rework Facility, the Naval Air Station, and various officers of the United States charged with the responsibility for managing the facilities which allegedly engaged in discriminatory employment practices (herein collectively referred to as "NARF"). An appeal was taken from an order of this Court overruling objections made by 3 of a class of 2,500 to the Decree. The Court of Appeals remanded the case to this Court "in

order that a reasoned response to appellants' objections can be forthcoming." *Saunders v. Naval Air Rework Facility*, 608 F.2d 1308, 1312 (9th Cir. 1979). Left to this Court was the determination whether a further hearing should be held concerning the objections of 3 of the 2,500 class members, *viz.* Joseph L. Ellis, Robert S. Dudley, and Preston L. Stitt. This Court was admonished that "if further hearing is to be dispensed with it should follow inquiry into the sufficiency of the hearing already had and a finding of such sufficiency." *Id.*

The Court has inquired into the sufficiency of the hearings already had (transcripts of which were designated as part of the record and sent to the Court of Appeals despite its statement that "[w]e find in the record no transcript of the hearings," *id.* at 1311) and finds that such hearings were and are sufficient and fully meet the requirements of *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832 (9th Cir. 1976). Accordingly, this Court reaffirms its judgment that the Decree is fair, reasonable, and adequate and again overrules all objections to said Decree.

## I

This case had its genesis in seven separate class actions brought by 18 named plaintiffs, including appellant-objectors Ellis, Dudley, and Stitt (herein "the objectors"), each action alleging discriminatory employment practices in violation of the Equal Employment Opportunity Act, 42 U.S.C. § 2000e–16, on the part of both the Naval Air Rework Facility and the Naval Air Station. Specifically, plaintiffs charged discrimination on the basis of race, national origin, and sex in practices and policies relating to promotions, apprentice selection, examinations, training programs, work assignments, and procedures for processing complaints of discrimination. In June, 1975, this Court denied defendants' motion for summary judgment, *Ellis v. Naval Air Rework Facility*, 404 F.Supp. 377 (N.D.Cal. 1975), and in September, 1975, certified a class of all past, present and future black, Chicano, Asian, and native American civil-

ian employees and applicants for civilian employment at the Naval Air Rework Facility and the Naval Air Station, *Ellis v. Naval Air Rework Facility*, 404 F.Supp. 391 (N.D. Cal.1975). In October, 1977, the class was modified to include Hispanic and Filipino employees and applicants and exclude Chicano and native American employees and applicants.

The parties have engaged in massive, class-wide discovery resulting in extensive statistical compilation and analysis. Both sides also devoted considerable time and resources to trial preparation. Early in the litigation, this Court, following the dictates of the Congress, ordered negotiations between the parties to commence forthwith. At first, owing principally to the intransigence of naval management personnel, the negotiations were almost totally unproductive. Then, at the urging of the Court, the higher NARF echelons became involved and with the aid of the Assistant Attorney General of the United States in charge of the Civil Division and as a result of numerous conferences in Washington, D. C. as well as in Alameda and San Francisco, the parties hammered out the Decree here in question providing not only relief from harsh discriminatory working rules but also providing for individual relief to certain class members, including promotions, increased status, and monetary compensation for past wrongs amounting in some cases to $10,000 each, paid from a fund of $500,000 contributed by the United States.

Upon the culmination of the settlement negotiations in September, 1977, the proposed Decree was submitted to the Court for its approval. The Court then ordered the parties to arrange for the two-pronged hearing mandated by the Court in *Mandujano*. The Court followed to the letter the procedure suggested in Section 1.45 of the Manual for Complex Litigation. At the first hearing on June 28, 1978, the Court found the tentative settlement to be fair, reasonable, and adequate, subject, of course, to the hearing and weighing of any objections and then ordered notice sent to the class complying with the *Mandujano* requirements.

At the second hearing, objections from 10 persons, including the objectors, were reviewed. Those of one objector were overruled as being untimely. The objections of all others excepting Messrs. Ellis, Dudley, Stitt, and Paz were withdrawn. On September 12, 1978, Magistrate Woelflen held an evidentiary hearing as directed by this Court to consider the remaining objections. On September 15, 1978, the Magistrate filed his findings recommending that the objections be overruled. On September 28, 1978, having adopted the Magistrate's recommendations, this Court entered the Decree. All 4 objectors appealed the overruling of their objections. Objector Paz voluntarily dismissed his objections on appeal and accepted the relief provided in the Decree. Thus the objections of Ellis, Dudley, and Stitt remain to be considered here.

## II

■ Dismissal or compromise of a class action is left to the sound discretion of the trial judge. *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975); 3B J. Moore, Federal Practice ¶ 23.80[4]. The approval of a class action settlement will be reversed only for abuse of that discretion. *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975). The United States Court of Appeals for the Third Circuit in *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30 (3d Cir. 1971), in discussing the trial judge's discretion, stated:

"Great weight is accorded his views because he is exposed to the litigants, and their strategies, positions and proofs. He is aware of the expense and possible legal bars to success. Simply stated, he is on the firing line and can evaluate the action accordingly." *Id.* at 34.

■ At the outset it is worthwhile to note that cooperation and voluntary compliance are the preferred means for achieving the statutory goals of Title VII of the Civil Rights Act of 1964. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1973). Thus, settlement is favored in resolving Title VII litigation in general. Specifically, in this suit,

there are a number of additional factors which weigh heavily in favor of the settlement embodied in the Decree. First, there was extensive discovery prior to settlement, allowing both counsel and the Court to fully evaluate the strengths, weaknesses, and equities of the parties' positions. This factor has been noted by both courts and commentators as supporting the fairness and reasonableness of a class action settlement. *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974); *Saylor v. Lindsley*, 456 F.2d 896 (2d Cir. 1972); Note, *Factors Considered in Determining the Fairness of a Settlement*, 68 Nw.L.Rev. 1146 (1974); 3B J. Moore, Federal Practice ¶ 23.80[4]. Second, this Court determined that the settlement was the product of good faith negotiations conducted at arm's length by both sides. The case was vigorously litigated and negotiated. Third, the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight. *Patterson v. Stovall*, 528 F.2d 108 (7th Cir. 1976). Fourth, the overwhelming majority of the class approved the Decree. A settlement may be approved as fair, reasonable, and adequate even if a large number of class members object. *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir. 1974); 3B J. Moore, Federal Practice ¶ 23.80[4]. In this case, in which only 3 out of a class of 2,500 currently maintain objections to the settlement, the overwhelming sentiment of the class is in favor of the Decree, a factor which provides strong support for the fairness of its terms. *Detroit v. Grinnell Corp., supra; Flinn v. FMC Corp., supra.* Fifth, considerable costs would have accrued to both sides, both in time and money, through continued litigation. *Bryan v. Pittsburgh Plate Glass Co., supra* ; 3B J. Moore, Federal Practice ¶ 23.80[4]. Finally, the fact that litigation in full of all the issues contained in this broad suit would have been very complex and fraught with the hazards of such massive litigation, when weighed against the fact that the relief afforded by the Decree, especially the prospective relief, is extensive, supports the fairness of the settlement. Thus, in the area of equitable

relief, which is the primary focus of Title VII actions, there was very little to be gained by the class in taking the case to trial, especially when balanced against the risks of litigating so complex a case. Before commencing its review of the objections at issue here, this Court emphasizes that the settlement being considered represents a *compromise* of the claims asserted by the plaintiffs. This bears repeating since the attitude expressed by the objectors is one of expecting to receive through settlement exactly what they would have received if they had successfully litigated the case. As a *quid pro quo* for not having to undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to moderate the measure of their demands.

### A

Contrary to the statement made by the Court of Appeals, a transcript of the hearing provided the objectors before Magistrate Woelflen was part of the record on appeal. It is contained in Volume X of the record. That transcript indicates that the Magistrate did limit the objectors to ten minutes each in presenting their objections. However, what the Court of Appeals was unable to note due to its failure to find the transcript in the record before it or to entertain oral argument is that the transcript also demonstrates that none of the objectors were prejudiced by having too little time since each objector freely chose to rely primarily on written materials which they filed with the Magistrate. Not one of them used up their allotted ten minutes, nor were they prevented from making any oral presentation by the Magistrate. The written materials submitted by each objector consisted of statements of their objections along with, among other items, portions of pleadings, interrogatories, and depositions on file in the case, medical and work evaluations, and letters.

As stated by the Court of Appeals, the objections herein in substance relate to the compensation and special relief provided for the objectors. The materials submitted by the objectors contain highly conclusory and frequently unintelligible statements to the effect that the objectors deserve more out of the settlement than they have been provided. However, it is impossible to find anything in the materials submitted to support the allegations of the objections. The conclusory nature of the objectors' charges and the lack of support for them made the "reasoned response" difficult.

### B

■ The first objection made by Ellis and Dudley is that they were denied due process through: (1) the withdrawal of their attorneys, the class attorneys, from representing them; (2) denial of access to hearings held in chambers; and (3) being severed from the class.. Counsel for the named plaintiffs and class members filed a motion for leave to withdraw as counsel for Ellis and Dudley on the ground that the settlement demands of Ellis and Dudley were antagonistic to the claims of other members of the class represented by them, and this Court granted the motion. This was the appropriate and ethical course for their attorneys. Far from being a due process violation, it was the only way to resolve the obvious conflict of interest created by the overwhelming approval by the rest of the class of the Decree. Objectors Ellis and Dudley were provided ample opportunity to retain other counsel which they did not do.

■ In relation to their claim of denial of access to Court hearings, objectors Dudley and Ellis were kept fully informed of the progress of the class action as long as their cases were consolidated with the class action. The only instances in which they were denied access to the Court's chambers involved conferences held in connection with hearings on the class action while their own cases were severed. (Even at this time the Court received Messrs. Dudley, Ellis, and Stitt in chambers to explain to them individually the effect of the Decree and to hear their objections to it.) This severance was a product of the objector's desire not to partake in the class settlement, and any harm which might have accrued to Ellis or

Dudley via the severance was cured by the Court's later order allowing them to reenter the class, which they did.

Mr. Ellis' second ground for objection is that he did not receive the same injunctive relief as Mr. Jadell Bell. Ellis' main ground for this claim appears to be a statement he relies on from a document entitled "Magistrate's Findings and Proposed Order" prepared by Magistrate Owen Woodruff on August 24, 1974, and signed as an order by Judge Weigel on October 29, 1974. The statement, which Ellis takes out of context, is to the effect that Ellis' case is in a stronger posture than Bell's due to Ellis having exhausted his administrative remedies. The statement refers to matters of discovery and scope of judicial review. It has nothing to do with the relative merits of either Bell's or Ellis' claim or with the type of affirmative relief either should be entitled to receive. The final items Ellis cites to support his promotion objection are a report and deposition testimony of Mr. Elmon Elmore, an E.E.O. investigator, that discrimination existed in the machine shop where Ellis worked. This evidence, however, is not relevant to exactly what sort of promotions Ellis was qualified to receive.[1] Thus, Mr. Ellis' promotion objections are conclusory and unsupported.

Mr. Ellis' third ground for objection is that he did not receive the same retirement upgrade as Mr. Eley Diggs. His sole ground for objection is that the defendants caused the disability which he claims led to his retirement. Among the materials submitted, Ellis included a number of medical reports, which document his disability but are not relevant to its cause. Thus, his claim that he deserves upgraded retirement is essentially unsupported.

Mr. Ellis' final objection is that he is not getting enough money under the terms of the Decree.[2] The Decree grants Ellis $10,000. He does not specify what amount would fairly, adequately, and reasonably settle his monetary claims. Nor does he state on what grounds he deserves a larger share of the settlement funds. This Court thus finds it impossible to respond to his objection in any way other than dismissing it for lack of support.

## C

In addition to his due process objection, dealt with above, Mr. Dudley also objects that discrimination in the machine shop at the Naval Air Rework Facility has not been dealt with since he and Mr. Ellis were not "part of the negotiations settlement." Contrary to Dudley's assertion, both he and Ellis are part of the settlement. Ellis was awarded $10,000; Dudley was awarded $6,500. In addition, his statement that the settlement does not cover discrimination in the machine shop is controverted by the fact that the Decree provides goals for injunctive relief according to job classifications for blue collar positions throughout the Naval Air Station and the Naval Air Rework Facility. Also, Attachment B of the Decree provides monetary relief for machinists denied promotions.

Dudley's further objections consist of unsupported assertions that he "shall receive" and "shall be credited" certain benefits. His right to these benefits, however, is to-

---

1. Mr. Ellis' employment records show that he received promotions in 1967 and 1969.

2. In conjunction with his objection as to his own monetary relief, Mr. Ellis also complains that $15,000 is too large an amount to be set aside for the costs of distributing the settlement fund. Attachment B of the Decree provides:

> "After resolution of all claims, a report on claims and the proposed pro rata distribution shall be made to the Court. The costs of Drogin and Associates and the projected costs of distribution shall be paid out of the settlement fund, and $15,000 is set aside for that purpose. If the costs are greater than the amount set aside, each pro rata share shall be reduced proportionately. If the costs are less than the amount set aside, the excess shall be distributed in equal amounts to class members receiving pro rata shares."

Thus, the amount set aside for distribution is not arbitrarily set at $15,000, but rather will be adjusted to reflect the actual costs of distribution.

tally unsupported.[3] He also asserts that the Decree is not being complied with, but he offers nothing to substantiate the charge.[4]

### D

Mr. Stitt's objections, made both orally before the Magistrate and in writing, are apparently twofold. His first objection is that he was unfairly and inadequately represented by his attorney. His grounds for this charge are that he did not receive enough of an award in terms of money or promotion under the Decree, which is essentially his second objection.

The first of these objections is altogether without merit. Stitt was very well represented by able, experienced, and conscientious counsel who did his utmost in representing Stitt's interests before this Court and in negotiations with NARF. When Stitt remained opposed to the terms of the settlement, his attorney was forced to withdraw from representing him. As discussed, *supra*, under Ellis' and Dudley's due process arguments, such a withdrawal was the only ethical and proper means for resolving the conflict between Stitt's position and that of the other class members represented by his attorney.

Stitt's argument that he did not receive enough under the Decree to fairly settle his claims is unsupported. He was awarded $6,500 under the Decree. He has been promoted from GS-7 to GS-11 while this litigation has been in progress. In 1978, he received a pay increase based on the quality of his work. It must be emphasized once again that it is a *compromise* of Stitt's claims that is being assessed here, not what he might have received if he had weathered the hazards of trial and successfully proved his claims.

For all the above-stated reasons, the objections of Messrs. Ellis, Dudley, and Stitt are overruled. This Court has provided as much of a "reasoned response" to those objections as is possible. In the words of the immortal Ethel Barrymore, "That's all there is. There isn't any more." [5]

Accordingly,

IT IS HEREBY ORDERED that:

1. The Order setting a status conference for February 15, 1980, is vacated.

2. The Consent Decree is again finally approved and is to be entered forthwith.

3. The funds contributed by the United States are to be distributed forthwith to the named plaintiffs and the class members in accordance with Attachment A to the Consent Decree.

3. Mr. Dudley's employment records show that he did receive promotions in 1966, 1969, and 1970.

4. This Court has overseen the process and formula provided by the Decree for distribution of the settlement funds. A series of hearings were held on this subject prior to the Court ordering distribution of the funds. Moreover, the Decree itself has full monitoring provisions,

allowing any class member to initiate and pursue before this Court a complaint of noncompliance with the terms of the Decree.

5. Added by Miss Barrymore with the permission of the author, Thomas Raceward, as the curtain line of his play *Sunday* starring Miss Barrymore. John Bartlett, Familiar Quotations 949 (14th ed. 1968).