Lewis WOODALL and Kadir Mutlu,
Plaintiffs–Appellants,

v.

The DRAKE HOTEL, INC., an Illinois
corporation, et al.,
Defendants–Appellees.

No. 87–2718.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 20, 1989.

Decided Sept. 19, 1990.

Rehearing and Rehearing En Banc
Denied Oct. 16, 1990.

**448**

Jerold S. Solovy, Robert P. Zapinski, Robert L. Byman, Jenner & Block, Chicago, Ill., for Lewis Woodall.

Kadir Mutlu, Chicago, Ill., pro se.

Mitchell Ware, Frank M. Grenard, David S. Allen, Jones, Ware & Grenard, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, KANNE, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

The appellants in this case, Kadir Mutlu and Lewis Woodall, were class members in an action brought pursuant to the Age Discrimination in Employment Act ("the ADEA"), 29 U.S.C. §§ 621–634, but were excluded from the benefits of the class settlement. Mutlu and Woodall appeal three orders of the district court. First, they appeal the court's order granting class counsel's motion to withdraw from representing them. Second, they appeal the court's order dismissing the class action by reason of settlement, and third, they appeal the order dismissing their individual claims for want of prosecution. For the following reasons, we reverse the orders of the district court.

## I.

In 1982, several employees of the Drake Hotel filed a lawsuit on behalf of themselves and all others similarly situated against the Drake Hotel ("the Drake") and its parent companies, Hilton International and Vista International, alleging that the defendants discriminated against them in terms of job placement, termination, and salary in violation of the Age Discrimination in Employment Act ("the ADEA"), 29 U.S.C. §§ 621–634 ("the *Behr* litigation"). In 1984, Mutlu and Woodall, along with fifty-two other present and former employees of the Drake, joined in the lawsuit pursuant to the "opt-in" provisions of the ADEA. See 29 U.S.C. § 626(b) (incorporating by reference the enforcement provisions of the Fair Labor Standards Act ("the FSLA"), 29 U.S.C. § 216(b)).[1] Anthony Valiulus, Kenneth Wexler, Lawrence Eiger, and Howard Cohen of the law firm Much, Shelist, Freed, Denenber, Ament and Eiger ("class counsel"), filed the consents on behalf of Mutlu, Woodall and the others, and entered their appearances as counsel for the consenting plaintiffs.

In October, 1986, Mutlu and Woodall received notice from class counsel stating that counsel would be filing a motion in the district court seeking leave to withdraw from representing the two of them and that the motion would be presented to the court on October 7 at 9:30 a.m. Neither the notice nor the motion set forth reasons for the proposed withdrawal. The Drake and the other defendants filed a written

---

**1.** Section 216(b) of the FSLA provides:

[An] [a]ction ... may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

objection to the motion on the basis that withdrawal would delay resolution of the lawsuit. On October 7, Mutlu and Woodall came to court in order to object. The district court, however, did not hold a hearing on the matter; instead, it took the motion under advisement. By minute order dated October 15, without holding a hearing on the issue and even though counsel never disclosed the reasons which they believed compelled them to seek withdrawal, the court granted class counsel's motion to withdraw.

Things went from bad to worse for Mutlu and Woodall. They attempted to retain new counsel but, not surprisingly, could not find an attorney willing to represent just two plaintiffs out of a class of ninety. In the meantime, class counsel and the defendants attended pretrial conferences and engaged in settlement negotiations. Neither Mutlu nor Woodall participated in the conferences or negotiations, apparently because they did not receive notice of these events.[2] In July, 1987, class counsel and the defendants reached a settlement agreement. This agreement did not include a resolution of the claims of Mutlu and Woodall. On July 24, the defendants informed the district court that a settlement agreement had been reached and asked for a dismissal of the cause of action. By minute order dated the same day, the district court dismissed the class cause of action.

Mutlu and Woodall found out about the settlement. On July 31, Mutlu sent a letter to the district court, inquiring about the effect of the settlement on his claim. On August 4, Woodall also sent a letter to the court, apparently in response to a conversation he had with the defendants' attorney. He wrote, "[a]fter my talk with you [the defendants' attorney] today, I cannot believe what you said, that you thought that I had dropped out of this case. Everytime I got a notice that a hearing on a motion was held, i [sic] always come down to court room Judge Aspen, to learn that the motion was heard a day before the date was stated."

On August 11, 1987, the defendants filed a motion to dismiss the claims of Woodall and Mutlu for want of prosecution, alleging that both plaintiffs had failed to participate in the case since October, 1986, when the court granted class counsel's motion for leave to withdraw. The court directed Mutlu and Woodall to file a response to the motion by September 18. Woodall and Mutlu filed their responses on August 26 and September 2, respectively. By minute order dated October 14, the district court granted the defendants' motion to dismiss. On October 29, Mutlu and Woodall filed *pro se* notices of appeal and this court appointed counsel to represent them on appeal.

## II.

Mutlu and Woodall raise three issues on appeal. Because the first two are related, we address them together. Mutlu and Woodall contend that the court abused its discretion by granting class counsel's motion for leave to withdraw from representing them. They argue that this action adversely affected their ability to proceed with their claims, especially because they were never informed how to safeguard their rights without counsel. They further contend that, because the district court did not take into account the fact that they were proceeding *pro se*, the court abused its discretion by later dismissing their claims for want of prosecution.

 We agree that the court abused its discretion by granting the motion to withdraw. Class counsel bore the burden of demonstrating that Mutlu and Woodall had consented to the motion, *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1088 (7th Cir.1982); or that there was a valid and compelling reason for the court to allow the withdrawal over objection. *See, e.g., Mekdeci v. Merrell National Laboratories*, 711 F.2d 1510, 1520–21 (11th Cir. 1983) (*actual* conflict of interest between attorney and client); *Green v. Forney*

---

**2.** The defendants did mail them notice of the first pre-trial conference scheduled for April 24, but this conference was rescheduled and it appears that Mutlu and Woodall did not receive notice of the change.

*Eng'g Co.*, 589 F.2d 243, 247–48 (5th Cir. 1979) (attorney unable to adequately represent client because of poor health); *Statue of Liberty–Ellis Island Found., Inc. v. International United Indus., Inc.*, 110 F.R.D. 395, 397 (S.D.N.Y.1986) (client refused to cooperate); *Smith v. Anderson-Tully Co.*, 608 F.Supp. 1143, 1146–47 (S.D. Miss.1985), *aff'd*, 846 F.2d 751 (5th Cir. 1988). Because class counsel never disclosed, and the court never compelled counsel to disclose, the reason for withdrawal, the court abused its discretion by granting the motion.

■ We further add that a court should be particularly circumspect in permitting counsel to withdraw from representing just a few plaintiffs in the context of a class action. *League of Martin v. City of Milwaukee*, 588 F.Supp. 1004 (E.D.Wis.1984); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D.Cal.1980), *aff'd*, 661 F.2d 939 (9th Cir.1981). The likelihood is great that the excluded plaintiffs will not be able to retain new counsel. Thus if withdrawal is compelled, procedures should be instituted to insure that the rights of the excluded plaintiffs are not overlooked. *See, e.g., League of Martin*, 588 F.Supp. at 1011 (fairness hearing procedure protected interests of the excluded plaintiffs); *Ellis*, 87 F.R.D. at 19 (excluded plaintiffs kept fully informed of the progress of the class action).

■ In light of our conclusion that Mutlu and Woodall should not have been denied benefit of counsel, we also agree that the dismissal of their claims for want of prosecution was unwarranted. Had Mutlu and Woodall been informed of their responsibilities and refused to participate, their inaction would have been damning, regardless of the merits of the court's earlier decision. However, they were not so informed. Nor did they receive notice of the ongoing proceedings, such as pretrial conferences and settlement negotiations.[3] Although plaintiffs must press their claims or forfeit them, some guidance was necessary here—especially in light of the fact that Mutlu

and Woodall did not attempt to bring their claims *pro se* in the first place. Because the court did not provide that guidance, it abused its discretion by dismissing the claims for want of prosecution.

■ Third, Mutlu and Woodall claim that the settlement and dismissal of the class action were improper because the court failed to evaluate the fairness or reasonableness of the settlement or to provide them with notice of the settlement. In seeking reversal of the order dismissing the class cause of action, they ask this court to apply the protection of Fed.R. Civ.P. 23(e) to an ADEA class action. Under that rule, "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." There is no similar provision with respect to an ADEA class action, which is brought pursuant to § 16(b) of the FSLA. *See* 29 U.S.C. § 626(b).

Mutlu and Woodall acknowledge that the procedures for *instituting* a class action under the Federal Rules and under § 16(b) are different and exclusive of each other. Under Rule 23, certain federal class action plaintiffs must "opt-out" of the cause of action in order to avoid being bound by a settlement or judgment. Under § 16(b), an ADEA class action plaintiff must "opt-in" in order to be bound. Courts are unanimous in holding that the "opt-out" procedure of Rule 23 is unavailable to potential ADEA plaintiffs; rather, an ADEA plaintiff must file a consent in order to participate in the lawsuit. *See, e.g., Woods v. New York Life Ins. Co.*, 686 F.2d 578 (7th Cir.1982); *LaChapelle v. Owens Illinois, Inc.*, 513 F.2d 286 (5th Cir.1975) (*per curiam*). Mutlu and Woodall contend, however, that once an ADEA plaintiff has opted-in, and a Federal Rules plaintiff has not opted-out, both sets of plaintiffs are similarly situated and should be accorded the

---

**3.** It appears that Mutlu and Woodall received notice of only one meeting, which was rescheduled, and no further notice sent. *See supra*, n. 2.

same protection by a court.[4]

It is certainly arguable that the application of Rule 23(e) to all ADEA class actions would be beneficial. Many of the policy reasons underlying the requirements of Rule 23(e) are applicable to ADEA class actions. Rule 23(e) requires notice and judicial approval of proposed settlements in order "to safeguard the rights of class members and allow consideration of the broader implications of a class action settlement." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 313 (7th Cir.1980). Because class members generally are not involved in settlement negotiations or even present to voice their views to the court, class members must rely on class representatives and class counsel to protect their interests. Sometimes, however, the interests of the class and class representatives or counsel diverge: the individual interests of the class representative may be antagonistic to the class, or class counsel may be tempted to bargain-away class rights as part of fee arrangement negotiations. Thus, court scrutiny is necessary. *Id.*

ADEA plaintiffs may face similar conflict of interest problems with "lead" plaintiffs and class counsel. They are not, however, in a totally analogous situation to a Federal Rules plaintiff. The ADEA enforcement mechanism contemplates individual participation in the collective action. An ADEA class plaintiff must file a consent with the court and generally consults with a lawyer before doing so. Thus, ADEA class members are not "absent" in the way Federal Rules plaintiffs may be absent.[5] Presumably, the assumption that ADEA class members are not "absent" plaintiffs accounts for the reason there is no provision similar to Rule 23(e) in the ADEA enforcement scheme.

That assumption, however, does not contemplate the possibility that some members of the "opt-in" class would, as here, be unrepresented by counsel and excluded from settlement. Mutlu and Woodall, like the "absent" class members, must rely on the district court as a backstop to insure that the settlement was fair and reasonable. Also like "absent" class members, Mutlu and Woodall needed notice that their rights were in jeopardy. Rule 23(e) requires notice as a matter of constitutional due process. *Simer v. Rios*, 661 F.2d 655, 666 (7th Cir.1981). Even though the settlement did not bind Mutlu and Woodall, it adversely affected their ability to achieve redress. *See Simer*, 661 F.2d at 665–67. A class of ninety yields much greater bargaining power than a class of two. As the number of plaintiffs decreases, the likelihood and amount of settlement also decrease. Proceeding to trial would have been an impossibility for Mutlu and Woodall without an attorney, especially in a "pattern and practice" discrimination case, *see Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), in which intent is inferred from statistical evidence. As a practical matter, a settlement which excluded their claims meant that Mutlu and Woodall's claims would never be adjudicated.

Thus, although we stop short of holding that Rule 23(e) should be applied generally

---

**4.** Other than addressing whether an ADEA plaintiff may utilize the Federal Rules "opt-out" procedure, courts have had little occasion to address the relationship between Rule 23 and section 16(b). One issue which courts have addressed is whether potential class members are entitled to receive notice that an ADEA lawsuit has been filed so that these potential plaintiffs can "opt-in" to the lawsuit. The circuits are split on this issue: *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 863 (9th Cir.1977), does not allow notice; *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (2d Cir.1978), allows notice. This circuit has held that district courts have the power to authorize notice by the plaintiff or plaintiff's counsel;

however, notice may not be sent on court letterhead so as to avoid judicial imprimatur of approval. *See Woods*, 686 F.2d 578.

**5.** That ADEA "opt-in" plaintiffs are any more involved in the action or yield any more power over "lead" plaintiffs or counsel than Federal Rules "opt-out" plaintiffs, however, seems dubious as a practical matter. For a discussion and criticism of the ADEA's class action statutory scheme, *see* Spahn, *Resurrecting the Spurious Class: Opting–In to the Age Discrimination Employment Act and the Equal Pay Act through the Fair Labor Standards Act*, 71 Geo.L.J. 119 (1982).

to all ADEA class actions, it is clear in this case that, because Mutlu and Woodall did not receive notice of the proposed settlement, the district court abused its discretion by dismissing the class cause of action by reason of settlement.

### III.

For the foregoing reasons, the orders of the district court are

REVERSED.